**ORIGINAL**

**FILED**
HARRISBURG, PA

FEB 0 5 2003

MARY E. D'ANDREA, CLERK
Per

TAM:TBS

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      )   NO.  1:CV-01-1084
                Plaintiff      )   (Judge Rambo)
                            )
        v.      )
                            )
$1,790,021 IN U.S. CURRENCY,      )
                Defendant      )
                            )
Alejandro Martinez-Lopez, Claimant )

## BRIEF IN SUPPORT OF SANCTIONS FOR FAILURE OF PARTY TO ATTEND OWN DEPOSITION

### I.    Statement of Procedural History

On June 19, 2001, the United States filed a verified complaint of forfeiture _in rem_ against the defendant $1,790,021 in currency.  On or about July 25, 2001, claimant, represented by counsel, filed a claim.  On or about August 22, 2001, claimant filed an answer.

On November 9, 2001, the United States filed a motion to stay the instant action pending completion of related criminal prosecutions for drug trafficking offenses in the Southern District of Texas.  The motion asserted both the interest of the United States in preserving the integrity of its investigation and the interest of the claimant in avoiding compulsory self-incrimination during the civil discovery process while the criminal prosecution and investigation was pending.  Claimant

concurred in the stay motion, and the Court granted the stay by Order dated November 14, 2001.

The stay was removed during the summer of 2002. A case management conference was held September 12, 2002. The case management order lists the case for non-jury trial during the May 2003 term. The deadline for completion of discovery is February 7, 2003. The deadline for dispositive motions is February 28, 2003.

## II.   **Statement of Facts**

The complaint alleges the following facts:

On December 28, 2000, troopers of the Pennsylvania State Police conducted a traffic stop of a tractor trailer bearing Texas license number R1PN70, traveling south on Interstate 81 near Grantville, Pennsylvania at a high rate of speed. The flatbed trailer was loaded with three very beat up pickup trucks, which were in very poor condition. The driver of the tractor trailer, Jose Montelongo, informed Trooper Jeff Allar that he had traveled from Texas to New York to pick up the three trucks, which were then to be transported to Mexico for resale. Trooper Allar's training and experience in traffic safety and regulation of interstate common carriers informed him that the transport of three pickup trucks in such poor condition from New York to Mexico on a flatbed truck for resale was in all likelihood not a cost effective or profitable means of transport.

2

Trooper Allar requested and received written consent from Montelongo to search the tractor trailer, and also summoned Trooper Tom Pinkerton and his trained drug detection dog, "Dakota," to the scene of the stop. Dakota alerted, or reacted, to several areas of the trailer, including its passenger side, the area underneath the forward most vehicle being hauled on the trailer, the outside rail of the trailer, and the interior of the tractor cab. Pennsylvania State Police also recovered a bag containing a vegetable substance appearing to be marijuana from an outside compartment of the tractor.[1] Based upon the discovery of the suspected marijuana, Montelongo was taken into custody and transported to Pennsylvania State Police barracks in Harrisburg.

The Pennsylvania State Police applied for and received a Pennsylvania search warrant for the tractor trailer and its contents. During the course of the ensuing search, a cardboard box containing $424,335.00 in U.S. currency was found concealed behind the rear seat of a red Nissan pickup truck being carried by the tractor trailer. This currency was divided into 20 kilogram-sized bundles sealed in plastic bags and wrapped in duct tape. $1,365,686.00 in U.S. currency was discovered in a metal compartment concealed under the wood planks that made up the deck of the trailer in the "fifth wheel" area, located directly under the red Nissan pickup truck, which was the front most vehicle on

---

[1]The substance was not, in fact, marijuana or any other controlled substance.

3

the trailer.  This currency was divided into 41 kilogram-sized bundles sealed in plastic bags and wrapped in duct tape.  The two sums of U.S. currency were seized and turned over to the Drug Enforcement Administration (DEA), and constitute the defendant res of $1,790,021.00 in this in rem civil forfeiture action.

When questioned following the seizure of the defendant currency, Montelongo disclaimed any knowledge of the presence of the currency in his load, advised that the trailer had been loaded by other persons in a vacant lot in Newburgh, New York, where he had "deadheaded" from Philadelphia following his driving of a load from Houston to Philadelphia.  Montelongo advised that after the trailer was loaded, secured and hitched to the tractor, he headed south and was advised by his dispatcher to proceed to Laredo, Texas, immediately across the border from Mexico. Montelongo was not charged, and he and the tractor trailer were released.

Mexico is a major source country for illegal controlled substances entering into the United States and is also a major transit route for illegal cocaine, heroin, marijuana and other controlled substances manufactured in other countries and illegally imported into the United States.  Laredo, Texas is both a major point of entry for illicit drugs from Mexico into the United States and a major point of exit for drug proceeds from the United States into Mexico, due to its status as a major border crossing for tractor trailer commerce in lawful goods.

4

Houston, Texas is a major drug transshipment city in the movement of illegal controlled substances from Mexico into the United States and north to destination cities in New York and New England.

Federal law[2] provides that a person or an agent or bailee of such person is required to file a report when the person, agent or bailee knowingly transports, is about to transport, or has transported monetary instruments of more then $10,000 at one time from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.  It is an offense punishable by imprisonment for up to ten years[3] for any person to fail to file such a report or cause or attempt to cause a person to fail to file such a report.  Any property involved in such a transaction or attempted transaction, any property traceable to such property, and any monetary instrument with respect to which a report has not been filed or any property traceable thereto may be seized and forfeited to the United States.[4]  A monetary instrument transported by common carrier, messenger or bailee is being transported from the time it is delivered to the common carrier, messenger or bailee through the time it is delivered to

---

[2] 31 U.S.C. § 5316.

[3] 31 U.S.C. § 5324(b) and (c).

[4] 31 U.S.C. § 5317(c).

the addressee, intended recipient or agent of the addressee or intended recipient without being transported further in, or taken out of, the United States.[5]

The complaint alleges that the defendant currency is subject to forfeiture under 31 U.S.C. § 5317(c) as a sum of currency in excess of $10,000 involved in an attempted removal from the United States to Mexico without filing the required report.  The complaint also alleges that the defendant currency was involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956, and was furnished or intended to be furnished in exchange for controlled substances or intended to be used to facilitate violations of 21 U.S.C. § 841 and 846, or was traceable to such property.

The claim filed by claimant Alejandro Martinez-Lopez asserts, without elaboration, that he is the true owner of the defendant currency, and that he obtained the currency in the regular course of his money exchange and auto purchasing and sales business.  Claimant's answer denies, without elaboration, that the defendant currency is subject to forfeiture, that it was involved in money laundering transactions or attempted transactions, that it was involved in a transaction or attempted transaction in violation of 31 U.S.C. § 5316 and 5324(b), and that it was furnished or intended to be furnished in exchange for

---

[5]31 U.S.C. § 5317(c).

6

controlled substances used to facilitate drug trafficking offenses or traceable to such property.  The Answer also denies that the tractor-trailer from which the currency was seized was traveling at a high rate of speed.  Finally, the answer professes insufficient information to answer the substantive allegations of the complaint repeated above, but generally denies that the defendant currency is subject to forfeiture, and makes the bare assertion that claimant is an innocent owner.

On November 26, 2002, the United States served upon Chris Flood, Esquire, counsel of record for claimant Alejandro Martinez-Lopez, notice of a deposition upon oral examination of Alejandro Martinez-Lopez, pursuant to Fed.R.Civ.P. 26(a)(5) and 30.  The deposition was to be taken at the United States Attorney's Office in Harrisburg, Pennsylvania, on December 17, 2002.  (Exhibit A (Notice of Deposition); Exhibit B (Letter of Theodore B. Smith, III dated November 26, 2002).)

In his claim, claimant requested that all correspondence and notices regarding his claim be sent to his attorney, Chris Flood, Esquire.  On December 11, 2002, attorney Flood contacted the undersigned by telephone and informed the undersigned that he had received the notice of deposition.

Attorney Flood stated that he was uncertain whether he would be able to locate the claimant in Mexico, and that counsel himself had a schedule conflict the date of the scheduled deposition.  The undersigned stated his willingness to reschedule

the deposition for the convenience of counsel, but only if counsel could represent that claimant would attend a rescheduled deposition. The undersigned agreed to defer moving for sanctions for at least 30 days following claimant's nonappearance, in order to give counsel further opportunity to try to locate claimant and assure the United States of his intention to appear at a rescheduled deposition. The understanding reached in the December 11, 2002 telephone conversation between counsel was memorialized in a letter to Attorney Flood dated December 12, 2002. (Exhibit C.)

The government's letter of December 12, 2002 expressly informed claimant and counsel that the United States would seek sanctions, including dismissal of the claim or some other dispositive motion, based upon the December 17, 2002 nonappearance unless claimant were to inform the United States through counsel of his willingness to appear at a deposition in the reasonably near future. Claimant nevertheless failed to appear for the scheduled deposition, and has since failed to give any assurance of his willingness to appear for a deposition.

Claimant is a Mexican national who has never appeared in this Court in support of his claim except through counsel. Witnesses in a large-scale cocaine trafficking investigation and prosecution in the Southern District of Texas have identified claimant as the source of the cocaine in which they trafficked.

Trial of the case is presently scheduled for May 2003.  The discovery deadline is February 7, 2003.  The deadline for dispositive motions is February 28, 2003.

## III.  Argument

**It Would Be a Proper Exercise of the Court's Discretion to Dismiss the Claim as a Sanction for Claimant's Failure to Attend His Own Deposition After Proper Service of Notice.**

Under Fed.R.Civ.P 37(d), sanctions may be imposed for a party's failure to attend his own deposition following proper notice, and the sanctions that may be imposed include any of the sanctions set forth in Rule 37(b)(2)(A) to (C).  Rule 37(b)(2)(C) provides that the Court may strike a pleading or dismiss a claim or part thereof or enter a default judgment as a sanction for discovery violations.  It is not necessary for a party moving for sanctions under Rule 37(d) to first obtain an order compelling discovery.  Black Horse Lane Assoc., L.P. v. Dow Chemical Corporation, 228 F.3d 275, 301 (3d Cir. 2000); Barnett & Son, Inc. v. Outboard Marine Corporation, 611 F.2d 32, 35 (3d Cir. 1979); United States v. Reyes, 307 F.3d 451, 457-58 (6th Cir. 2002) (dismissal of claim in ancillary proceedings to criminal forfeiture action); United States v. Wright, Claimant, 187 F.3d 633 (4th Cir. 1999) (table), 1999 WL 507119, **3-4 (default judgment in civil forfeiture action)(copy attached).

Rule 37(d) gives the district court wide discretion to impose sanctions for a party's failure to attend his own

deposition.  <u>Wright, Claimant</u>, at **3 (citing <u>Mutual Fed.Sav. &</u>
<u>Loan Ass'n v. Richards & Assocs., Inc.</u>, 872 F.2d 88, 92 (4th Cir.
1989)).  A court's decision to dismiss a claim or award a default
judgment under Rule 37(d) is reviewed only for an abuse of
discretion.  <u>National Hockey League v. Metropolitan Hockey Club,</u>
<u>Inc.</u>, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780 (1976).

Rule 37 does not authorize dismissal of a complaint where it
has been established that the noncomplying party's failure to
comply is due to inability, and not to willfulness, bad faith, or
any fault of the noncomplying party.  <u>National Hockey League</u>, 427
U.S. at 640, 96 S.Ct. at 2779 (citing <u>Societe Internationale v.</u>
<u>Rogers</u>, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096 (1958)).  A
district court should only exercise its discretion to enter a
default judgment where it is demonstrated that the failure to
comply with discovery "materially affects the substantial rights
of the adverse party and is prejudicial to the presentation of
his case."  <u>Wilson v. Volkswagen of Am., Inc.</u>, 561 F.2d 494, 504
(4th Cir. 1977).

Here, claimant's noncompliance is due not to inability but,
rather, to fault on the part of claimant.  Claimant was properly
served with the deposition notice through counsel, and this is
the method of service claimant requested be made.  Counsel
actually received the deposition notice.  Attempts to serve
claimant at the address he set forth in his claim have proved
futile.  The United States did not attempt to "snap" a default

judgment or dismissal of the claim the day of claimant's nonappearance, but instead reasonably gave claimant more than 30 days to assure the government of his willingness to attend a rescheduled deposition.  Claimant continues to refuse to give any assurance that he will appear for a deposition or comply with other discovery obligations.

Likewise, claimant's failure to appear materially affects the substantial rights of the United States and is prejudicial to its presentation of its case.  The claim and answer are as "bare bones" as they could be, even given the lenient standards of notice pleading.  The United States is entitled to test the veracity of claimant's assertion that he obtained the defendant currency through his money exchange and automobile business and is an innocent owner, and there is no reason in this civil case for the United States to have to wait until trial of the case in order to do so.  Moreover, claimant's failure to appear for a scheduled deposition of which he has notice suggests, in light of his status as a subject of the Southern District of Texas's investigation, that he will similarly fail to appear for the scheduled trial.

There is, on this record, no genuine issue of material fact to be tried[6], such that the government's and the Court's interest

---

[6]If claimant's claim survives the instant motion, it might very well be subject to a summary judgment motion filed on or before the deadline for dispositive motions.

11

in the orderly litigation of this lawsuit should give way to the "sound public policy of deciding cases on their merits."  See <u>Wilson</u>, 561 F.2d at 503-04.  Claimant's "bare bones" denial of the allegations of the complaint and assertion that he is an innocent owner are insufficient to create a genuine issue of material fact, and claimant is in control of his own destiny in this regard.  If he wishes to have his case decided on the merits, he should appear under oath and subject himself to cross-examination.  Refusing to do so, he cannot seriously contend that it would be an abuse of discretion for the Court to remove his opportunity to do so.

The Sixth Circuit's decision in <u>Reyes</u> is instructive.  In that criminal forfeiture ancillary proceeding, the United States made two requests for production of documents four days apart, and when the claimant failed to respond to the second request the government filed its motion to strike the claim, which the district court granted.  <u>Reyes</u>, 307 F.3d at 458.  The Sixth Circuit held that under Rule 37(d), incorporating Rule 37(b)(2)(C), the district court had authority to dismiss the case and did not abuse its discretion in doing so.  <u>Id.</u>

Noting the claimant's burden of showing his failure to comply was due to inability as opposed to willfulness or bad faith, and the resulting presumption that dismissal is not an abuse of discretion where the claimant fails to show his noncompliance was due to inability, the court observed that the

**12**

claimant had done nothing to overcome this presumption.  Id.
While the claimant claimed his wife's death, his mother's
illness, a language barrier and poor record keeping impeded his
ability to comply with requests for production of documents, the
court found there to be no excuse for the claimant's failure to
take action until five months after his wife's death, nor for his
failure to sign authorizations for the government to obtain the
requested documents on its own.  Id.  As for prejudice, the court
found the government had suffered prejudice in that it could not
comply with the district court's discovery deadline.  Id.

The facts and circumstances in favor of dismissal here are
considerably greater than in Reyes.  Here, the government gave
notice of the deposition on November 26, 2002, offered defendant
and counsel a reasonable opportunity to seek rescheduling,
promised not to seek sanctions for at least 30 days after the
initial nonappearance on December 17, 2002, and contacted counsel
again 40 days after the nonappearance.  Claimant has offered no
excuse for his nonappearance.

The government is prejudiced in the same way here as it was
in Reyes, in that the discovery deadline is about to expire.
Moreover, the deadline for dispositive motions is less than four
weeks away, and the government's opportunity through discovery to
obtain documents or admissions that would enhance its chances for
success on a dispositive motion has been wasted through
claimant's noncompliance.

It is anticipated that claimant will respond that discovery is not necessary in order for the Court to rule upon a motion for suppression of evidence, a motion claimant's counsel indicated he intended to file during the case management conference but has not yet filed.  The government's reply to such a claim is twofold:  First, the United States maintains it is entitled to discovery of facts and documents that might assist it in litigating a suppression motion in this civil case.  Second, even a successful suppression motion would not terminate this case, and claimant is not entitled to deprive the United States of the discovery it needs for trial simply because he thinks such discovery is not necessary in order to litigate a suppression motion.

In <u>Barnett</u>, the Third Circuit decision upholding dismissal as a Rule 37(d) sanction for failure of parties to attend their own depositions, it is true that part of the district court's basis for imposing the extreme sanction of dismissal was the parties' prior history of failing to comply with court-ordered production of documents.  <u>Barnett</u>, 611 F.2d at 34-35.  Here, however, while there is no prior history of noncompliance with court-ordered discovery, there is a sustained pattern of noncompliance with a discovery obligation as to which there is no debate.  The United States has been trying to depose claimant since November 26, 2002, knowing that it is bound by various deadlines set forth in the case management order, and reminding

**14**

defendant of this fact.   (Exhibit B.)   This is precisely why Rule 37(d) exists, because the failure of a party to attend his own deposition is a special case where sanctions are appropriate even without an order compelling discovery.   As the Third Circuit held in Barnett, an order compelling discovery is not a necessary predicate to sanctions under Rule 37(d), and the dismissal sanction, while severe, is a necessary tool.   Id. at 35-36.

"It is true that dismissal prevents appellants from presenting their claims for relief at trial, nonetheless, appellants, having flagrantly ignored their discovery obligations, have brought this sanction upon themselves."   Id. at 36.   The same can be said of claimant here.

## IV.   Conclusion

For all of the above reasons, the United States of America respectfully requests that this Honorable Court dismiss the claim or order such other relief as it deems appropriate.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

Date: 2/5/03

THEODORE B. SMITH, III
Assistant U.S. Attorney

187 F.3d 633 (Table)
**Unpublished Disposition**

**Page 12**

(Cite as: 187 F.3d 633,  1999 WL 507119 (4th Cir.(S.C.)))
**C**

NOTICE:  THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.  Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Alfred WRIGHT, Claimant-Appellant,
and
Ten (10) Vehicles, each together with its equipment, accessories and contents,
more particularly described as follows: One (1) 1991 Honda Accord, Vin JHMCB7684MC065272, Blue in color, South Carolina License Number DJT290 (1995), Registered Owner: Alfred Wright; One (1) 1994 Plymouth Voyager Sport Van, Vin 1P4GH44RX160897, green in color, South Carolina license number JBJ665 (1995), Registered owner: Alfred Wright; One (1) 1994 Chevrolet Silverado Extended Cab Pickup Truck, VIN2GEC19K4R1160802, red in color, South Carolina license number LZR315 (1994), registered owner: Alfred Wright; One (1) 1994 Mercedes S420, VIN WDBGA43EXRA181611, black in color, South Carolina license number XUBUZZY (1994), Registered owner: Alfred Wright; One (1) 1995 Mitsubishi Eclipse Automobile, Vin 4A3AK34UXSE029749, green in color, South Carolina license number KD7877 (1995), Registered owner: Geraldine Wilson; One 1991 Volvo 944SE, Vin YV1KA87423M001852, black in color, New York license number SCHEMARA (1994), Registered owners: Alfred C. Wright and Schemara Wright; One (1) 1993 Cadillac Allante Convertible, Vin 1G6VS3397PU125112, red in color, New York license number ZUBUZZY (1994), Registered owner: Alfred C. Wright; One 1992 Chevrolet Fleetside Pickup Truck K2500, 4-Wheel Drive with snowplow, blue in color, VIN 1GCGK24K1NE188473, New York license number F3D632 (1994), Registered owner: Alfred Wright; One (1) 1994 Mercedes Benz S600V, VIN WDBGA57E0RA157706, black

in color, New York license number ZOBUZZY (1994), Registered owner: Alfred Wright; One (1) 1994 Honda Passport, VIN 4S6CY58V7R4406983, green in color, New York license number Y3F498 (1994), Registered owner: Alfred C. Wright; One parcel of real property designated as Lot 11 Block Gin Otranto Subdivision Section Iii-band located in the County of Berkeley, State of South Carolina with all improvements thereon and with all rights and easements appertaining being titled in the name of Alfred C. Wright; One parcel of real property containing twenty and 01/100 (20.01) acres more or less and located in Second St. James Goose Creek Parish in the County of Berkeley, State of South Carolina with all improvements thereon and with all rights and easements appertaining being titled in the name of Alfred C. Wright; 13 Second Avenue, one parcel of real property located at 13 Second Avenue in the City of Spring Valley, County of Rockland, State of New York With All Improvements Thereon And With All Rights And Easements Appertaining, Being Titled In The Name Of Alfred C. Wright; 17 Second Avenue, one parcel of real property located at 17 Second Avenue in the City of Spring Valley, County of Rockland, State of New York with all improvements thereon and with all rights and easements appertaining, being titled in the name of Alfred C. Wright; 19 Second Avenue, one parcel of real property located at 19 Second Avenue in the City of Spring Valley, County of Rockland, State of New York with all improvements thereon and with all rights and easements appertaining, being titled in the name of Alfred C. Wright; 21 Second Avenue, one parcel of real property located at 21 Second Avenue in the City of Spring Valley, County of Rockland, State of New York with all improvements thereon and with all rights and easements appertaining, being titled in the name of Alfred C. Wright; Block "C", one parcel of real property containing four and 8/10 (4.8) acres more or less

187 F.3d 633 (Table)
(Cite as: 187 F.3d 633, 1999 WL 507119 (4th Cir.(S.C.)))

designated as block "C"and
located in Second St. James Goose Creek Parish on
Eva Hill near the City
of Holly Hill in the County of Berkeley, State of
South Carolina with all
improvements thereon including one 1991 Fleetwood
24 x 52 double-wide mobile
home model Eagle Trace Serial Number GAFLL35A
& B03696ET titled in the name of
Geraldine Wilson situated on and/or affixed to the
above described real
property and with all rights and easements
appertaining being titled in the
names of Alfred C. Wright vested remainder interest
and Eva Brown Wright Life
Estate and Geraldine Wilson Mobile Home,
Defendants,
Mercedes-Benz Credit Corporation; Chase Manhattan
Auto; Geraldine Wilson;
Carolyn M. Umphlett, Treasurer of Berkeley County,
SC; Darlene Kinlock; George
W. Renc; Ethel Murphy; James Roden; Shirley Ann
Jackson; Pauline Petrkin;
Schemara Wright, Claimants.

No. 97-2031.

Argued May 3, 1999.
Decided July 19, 1999.

Appeal from the United States District Court for the
District of South Carolina, at Charleston. David C.
Norton, District Judge. (CA-95-2360-2-18, CA-
95-3062-18, CA-96-2008-2-18, CA-96-2359-2-18)

Michael S. Seekings, Charleston, South Carolina, for
Appellant.

Stanley D. Ragsdale, Assistant United States
Attorney, Columbia, South Carolina, for Appellee.

J. Rene Josey, United States Attorney, Columbia,
South Carolina, for Appellee.

Before MURNAGHAN, LUTTIG, and KING,
Circuit Judges.

OPINION

PER CURIAM.

**\*\*1** The United States ("Government") brought in
rem civil **forfeiture** proceedings against various
properties owned by Alfred Wright ("Wright"),

alleging that he acquired those properties with
proceeds from illegal gambling and money laundering
operations. After Wright failed to appear at two
depositions, in contravention of the district court's
order, the court granted the Government's Second
Motion for **Sanctions** and/or Default Judgment and,
pursuant to Rule **37(d)** of the Federal Rules of Civil
Procedure, entered a default judgment against Wright.
Wright now appeals from that order. Finding no abuse
of discretion, we affirm.

I.

On August 14, 1996, Wright was indicted in the
District of South Carolina on forty-six counts of
gambling and money laundering. [FN1] Concurrently,
the Government instituted in rem civil **forfeiture**
proceedings against various properties owned by
Wright, alleging that Wright acquired those properties
with illegitimate funds.

FN1. As the alleged leader of an illegal gambling
and money laundering operation, Wright instructed
his co-conspirators to open various bank accounts in
South Carolina. In order to avoid Internal Revenue
Service filings by those banks, Wright provided his
co-conspirators with explicit instructions regarding
the timing and amount of deposits to be made into
the accounts.
Wright eventually entered into a negotiated plea
agreement with the Government and, on October 7,
1996, pleaded guilty to one count of money
structuring, in violation of 31 U.S.C. § 5324(a)(3)
and (c)(2).

On May 19, 1997, Wright appeared before the
district court for sentencing in his criminal case. Upon
reviewing the Pre-Sentence Report, however, the
district judge decided that Wright had not provided
sufficiently detailed financial information for the court
to determine the appropriate sentence. *United States v.
Alfred Wright,* 2:95-883, Tr. at 14-15 (D.S.C., May
19, 1997). Accordingly, the court stayed the
sentencing proceedings in the criminal case until the
completion of the parallel civil **forfeiture** case.

Wright's deposition in the civil **forfeiture** case was
initially scheduled to occur in New York on June 5,
1997. Although the Government served Wright with a
subpoena commanding his attendance at the
deposition, Wright failed to appear. On June 9, 1997,
the Government filed its first Motion for Sanctions
and/or Default Judgment. Subsequently, on June 30,
1997, Wright filed a Motion to Stay Proceedings in
the civil **forfeiture** case pending final resolution of his

187 F.3d 633 (Table)                                                      **Page 14**
(Cite as: 187 F.3d 633, 1999 WL 507119, **1 (4th Cir.(S.C.)))

criminal case.

On July 3, 1997, the parties appeared before the district court in the civil **forfeiture** case. The district court found that, by failing to appear for his deposition, Wright had acted in bad faith and had prejudiced the Government. The court sanctioned Wright by imposing on him the Government's costs to attend the aborted deposition in New York, and it rescheduled the deposition in Columbia, South Carolina. During the hearing, the district court also explicitly warned Wright's counsel that, if Wright failed to appear at the rescheduled deposition, the court would enter a default judgment against him. At his counsel's request, Wright's Motion to Stay Proceedings in the civil **forfeiture** case was held in abeyance.

**\*\*2** Wright's deposition was rescheduled for July 10, 1997, in Columbia, South Carolina. Once again, without explanation, Wright failed to attend. The Government filed its Second Motion for Sanctions and/or Default Judgment on the same day. On July 22, 1997, the district court granted the Government's motion and entered a default judgment against Wright. The district court simultaneously denied Wright's Motion to Stay Proceedings. Wright now appeals the district court's decision ordering judgment by default.

II.

On appeal, Wright raises two issues. First, Wright contends that the district court abused its discretion in denying his motion to stay the civil **forfeiture** case pending final resolution of the related criminal case. Second, he argues that the district court abused its discretion by imposing the sanction of judgment by default against him for failing to comply with discovery in the civil **forfeiture** case. We address each issue in turn.

A.

We review a district court's denial of a motion to stay for abuse of discretion. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). Although Wright concedes that there is no constitutional guarantee requiring a stay in a civil **forfeiture** proceeding pending completion of all criminal matters, he maintains that "it is imperative and proper that the two matters be kept separate and distinct." Wright contends that the district court should exercise its discretion to stay civil **forfeiture** proceedings pending completion of the related criminal proceedings to avoid any conflict between the

two and any prejudice to the defendant.

Wright correctly asserts that the Supreme Court has indicated that the Government may not use evidence against a criminal defendant which has been coerced from him under penalty of suffering a **forfeiture** of his property. *United States v. Kordel,* 397 U.S. 1, 13, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). Additionally, this court has noted that, when the Government directly or indirectly sponsors a civil suit for the purpose of aiding a criminal investigation, Fifth Amendment and ethical concerns are raised. *In re Grand Jury Subpoena,* 836 F.2d 1468, 1472 n. 6 (4th Cir.1988).

Such concerns, however, are simply not implicated in this case. Here, Wright entered into a negotiated plea agreement in his criminal case, then proceeded to participate, without objection, in the parallel civil **forfeiture** action. At the time of his sentencing hearing in the criminal case, however, Wright had not provided the probation officer with a full and complete financial history. As the district court noted, Wright's failure to provide complete financial information created the possibility of an anomalous result. If allowed to proceed with sentencing with incomplete financial information, Wright may have been able to underestimate his income in order to avoid a criminal fine, yet overstate his legitimate income in the parallel civil **forfeiture** action to prove the properties in question were acquired with untainted funds.

**\*\*3** Significantly, Wright did not raise a claim of Fifth Amendment privilege against self-incrimination in the district court proceedings, nor does he do so now. In addition, Wright never requested a protective order from the district court. Until he filed his Motion to Stay Proceedings, Wright never raised any concerns regarding the fact that the civil **forfeiture** case was proceeding concurrently with the criminal case. Wright then requested that his Motion to Stay proceedings beheld in abeyance. Because Wright did not raise any of these potential objections below, the district court was never given the opportunity to rule on them; Wright has therefore waived his ability to raise them here.

The district court's decision to deny a stay in Wright's civil **forfeiture** case pending the completion of the related criminal case does not run afoul of any concern identified by this court or the Supreme Court. Consequently, there was no abuse of discretion and we affirm the district court's decision on this issue.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

### B.

Wright next argues that the district court abused its discretion by entering judgment by default against him as a sanction for his failure to appear at the rescheduled deposition. A district court's decision to impose judgment by default as a sanction is governed by Rule 37 of the Federal Rules of Civil Procedure. Rule 37(d) gives the district court wide discretion to impose **sanctions** for a party's failure to comply with its discovery orders. *Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir.1989). This court,therefore, reviews a district court's decision under Rule 37(d) for an abuse of discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). However, when the sanction imposed is judgment by default, the district court's range of discretion is more narrow due to a party's right to a jury trial and a fair day in court and the "sound public policy of deciding cases on their merits." *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-04 (4th Cir.1977). A district court should only exercise its discretion to enter a default judgment where it is demonstrated that the failure to comply with discovery "materially affects the substantial rights of the adverse party and is prejudicial to the presentation of his case." *Id.* at 504.

Wright's deposition was scheduled to occur in New York on June 5, 1997. The civil **forfeiture** trial was scheduled to begin on July 14, 1997. Prior to the deposition, the Government served Wright with a subpoena commanding his presence at the deposition. Without explanation, Wright failed to appear.

**\*\*4** In response to Wright's failure to appear, the Government, pursuant to Rules 37(d) and 55(b)(2) of the Federal Rules of Civil Procedure, [FN2] moved the district court for the imposition of **sanctions** against Wright, as well as for the entry of a default order against Wright. Rule 37(d) provides, in pertinent part:

> FN2. The district court addressed the Government's initial Motion for **Sanctions** and/or Default Judgment and its Second Motion for **Sanctions** and/or Default Judgment under Rule 37(d). Accordingly, we review the district court's decision under that rule.

If a party ... fails (1) to appear before the officer who is to take the deposition, after being served with proper notice ... the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), or (C) of subdivision (b)(2) of this rule.
Fed.R.Civ.P. 37(d). Subparagraph (C) of Rule 37(b)(2) authorizes the district court to make the following orders:
> An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or *rendering a judgment by default against the disobedient party*.
Fed.R.Civ.P. 37(b)(2)(C) (emphasis added).

When it considered the Government's initial Motion for Sanctions and/or Default Judgment, the district court made the following findings: (1) Wright acted in bad faith by not attending his deposition; (2) the Government was prejudiced by Wright's "unilateral failure to attend"; and (3) this type of noncompliance with discovery should be deterred. The district court then sanctioned Wright by imposing on him the Government's travel costs and ordered the deposition to be rescheduled to take place in Columbia, South Carolina. The district court did not grant the Government's request for entry of a default judgment against Wright; however, it specifically informed Wright's counsel that failure to appear at the rescheduled deposition would result in default.

Subsequently, and notwithstanding the clear warning of the district judge, Wright failed to appear for the rescheduled deposition in Columbia, South Carolina. Once again, Wright's counsel could provide no legitimate excuse for Wright's absence. The Government filed its Second Motion for Sanctions and/or Default Judgment and the district court, acting as it had represented it would, granted the motion and entered a default judgment against Wright and in favor of the Government on July 22, 1997.

**\*\*5** When deciding a Rule 37(d) default judgment motion, a district court must weigh the competing interests of the court's desire to enforce its discovery orders against the party's right to a trial by jury and a fair day in court by applying a four part test. *Wilson*, 561 F.2d at 503-04; *Mutual Fed.*, 872 F.2d at 92. The factors a court must consider are:
> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

187 F.3d 633 (Table)                                                                 **Page 16**
(Cite as: 187 F.3d 633, 1999 WL 507119, **5 (4th Cir.(S.C.)))

*Wilson,* 561 F.2d at 503-06. The purpose of such an evaluation is to ensure that only the most flagrant cases of noncompliance will result in judgment by default. *Mutual Fed.,* 872 F.2d at 92.

In this case, the district court clearly applied the *Wilson* factors. First, it specifically found that, although Wright had actual notice of both depositions, he wilfully and in bad faith failed to appear.

Second, the court found that because Wright had denied the Government's factual assertions in his answers and alleged that the properties in question were acquired with legitimate funds, his refusal to be deposed deprived the Government of the ability to discover material evidence that Wright intended to offer at trial as a defense to the **forfeitures.** This deprivation of discovery was prejudicial to the Government's ability to present its case.

Third, the district court found that there was an obvious need to deter this sort of noncompliance. Parties in civil proceedings must be afforded the opportunity to uncover evidence which could affect the outcome of the case. The district court found that to rule otherwise would render the rules governing civil discovery meaningless.

Finally, the district court found that a less drastic sanction would be ineffective. The court had previously imposed a less drastic sanction when it assessed costs and rescheduled the deposition, and it had specifically warned Wright that failure to attend the rescheduled deposition would result in the entry of default judgment against him. Additionally, the court found that any lesser sanction would not supply the Government with the material evidence which Wright had refused to provide.

The Supreme Court has instructed that the most severe sanction, judgment by default, "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League,* 427 U.S. at 643. We conclude that the district court acted within its discretion when it decided that Wright's conduct warranted the imposition of the default judgment sanction, and accordingly, affirm the judgment.

**\*\*6** *AFFIRMED*

187 F.3d 633 (Table), 1999 WL 507119 (4th Cir.(S.C.)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CIVIL NO. 1:CV-01-1084 |
| | ) | |
| Plaintiff | ) | |
| | ) | (Judge Rambo) |
| v. | ) | |
| | ) | |
| $1,790,021 in U.S. CURRENCY, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| Alejandro Martinez-Lopez, Claimant | ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 5th day of February, 2003, she served a copy of the attached

**BRIEF IN SUPPORT OF SANCTIONS FOR FAILURE OF
PARTY TO ATTEND OWN DEPOSITION**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

Chris Flood, Esquire
FLOOD & FLOOD
914 Preston Avenue, Suite 800
Houston, TX   77002-1832

CINDY J. LONG
Legal Assistant