**ORIGINAL**

TAM:TBS

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,          )<br>            Plaintiff           )<br>                                   )<br>     v.                            )<br>                                   )<br>$1,790,021 IN U.S. CURRENCY,       )<br>            Defendant              )<br>                                   )<br>Alejandro Martinez-Lopez, Claimant ) | CR. NO.  1:CV-01-1084<br>(Judge Rambo)<br><br>FILED<br>HARRISBURG, PA<br><br>FEB 25 2003<br><br>MARY E. D'ANDREA, CL<br>Per _____ |

**BRIEF IN SUPPORT OF SUMMARY JUDGMENT**

I.   **Statement of Procedural History**

On June 19, 2001, the United States filed a verified complaint of forfeiture <u>in rem</u> against the defendant $1,790,021 in currency. On or about July 25, 2001, claimant, represented by counsel, filed a claim. On or about August 22, 2001, claimant filed an answer.

On November 9, 2001, the United States filed a motion to stay the instant action pending completion of related criminal prosecutions for drug trafficking offenses in the Southern District of Texas. The motion asserted both the interest of the United States in preserving the integrity of its investigation and the interest of the claimant in avoiding compulsory self-incrimination during the civil discovery process while the criminal prosecution and investigation was pending. Claimant

concurred in the stay motion, and the Court granted the stay by Order dated November 14, 2001.

The stay was removed during the summer of 2002. A case management conference was held September 12, 2002. The case management order lists the case for non-jury trial during the May 2003 term. The deadline for completion of discovery is February 7, 2003. The deadline for dispositive motions is February 28, 2003.

On February 4. 2003, the United States filed a motion for sanctions against claimant for his failure to attend his own properly noticed deposition. On February 4, 2003, the United States filed a brief in support of its motion for sanctions.

II. **Statement of Facts**

The complaint alleges the following facts:

On December 28, 2000, troopers of the Pennsylvania State Police conducted a traffic stop of a tractor trailer bearing Texas license number R1PN70, traveling south on Interstate 81 near Grantville, Pennsylvania at a high rate of speed. The flatbed trailer was loaded with three very beat up pickup trucks, which were in very poor condition. The driver of the tractor trailer, Jose Montelongo, informed Trooper Jeff Allar that he had traveled from Texas to New York to pick up the three trucks, which were then to be transported to Mexico for resale. Trooper Allar's training and experience in traffic safety and regulation

of interstate common carriers informed him that the transport of three pickup trucks in such poor condition from New York to Mexico on a flatbed truck for resale was in all likelihood not a cost effective or profitable means of transport.

Trooper Allar requested and received written consent from Montelongo to search the tractor trailer, and also summoned Trooper Tom Pinkerton and his trained drug detection dog, "Dakota," to the scene of the stop. Dakota alerted, or reacted, to several areas of the trailer, including its passenger side, the area underneath the forward most vehicle being hauled on the trailer, the outside rail of the trailer, and the interior of the tractor cab. Pennsylvania State Police also recovered a bag containing a vegetable substance appearing to be marijuana from an outside compartment of the tractor.[1] Based upon the discovery of the suspected marijuana, Montelongo was taken into custody and transported to Pennsylvania State Police barracks in Harrisburg.

The Pennsylvania State Police applied for and received a Pennsylvania search warrant for the tractor trailer and its contents. During the course of the ensuing search, a cardboard box containing $424,335.00 in U.S. currency was found concealed behind the rear seat of a red Nissan pickup truck being carried by the tractor trailer. This currency was divided into 20 kilogram-sized bundles sealed in plastic bags and wrapped in duct

---

[1] The substance was not, in fact, marijuana or any other controlled substance.

3

tape. $1,365,686.00 in U.S. currency was discovered in a metal compartment concealed under the wood planks that made up the deck of the trailer in the "fifth wheel" area, located directly under the red Nissan pickup truck, which was the front most vehicle on the trailer. This currency was divided into 41 kilogram-sized bundles sealed in plastic bags and wrapped in duct tape. The two sums of U.S. currency were seized and turned over to the Drug Enforcement Administration (DEA), and constitute the defendant res of $1,790,021.00 in this in rem civil forfeiture action.

When questioned following the seizure of the defendant currency, Montelongo disclaimed any knowledge of the presence of the currency in his load, advised that the trailer had been loaded by other persons in a vacant lot in Newburgh, New York, where he had "deadheaded" from Philadelphia following his driving of a load from Houston to Philadelphia. Montelongo advised that after the trailer was loaded, secured and hitched to the tractor, he headed south and was advised by his dispatcher to proceed to Laredo, Texas, immediately across the border from Mexico. Montelongo was not charged, and he and the tractor trailer were released.

Mexico is a major source country for illegal controlled substances entering into the United States and is also a major transit route for illegal cocaine, heroin, marijuana and other controlled substances manufactured in other countries and illegally imported into the United States. Laredo, Texas is both

4

a major point of entry for illicit drugs from Mexico into the United States and a major point of exit for drug proceeds from the United States into Mexico, due to its status as a major border crossing for tractor trailer commerce in lawful goods. Houston, Texas is a major drug transshipment city in the movement of illegal controlled substances from Mexico into the United States and north to destination cities in New York and New England.

Federal law[2] provides that a person or an agent or bailee of such person is required to file a report when the person, agent or bailee knowingly transports, is about to transport, or has transported monetary instruments of more then $10,000 at one time from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States. It is an offense punishable by imprisonment for up to ten years[3] for any person to fail to file such a report or cause or attempt to cause a person to fail to file such a report. Any property involved in such a transaction or attempted transaction, any property traceable to such property, and any monetary instrument with respect to which a report has not been filed or any property traceable thereto may

---

[2] 31 U.S.C. § 5316.

[3] 31 U.S.C. § 5324(b) and (c).

be seized and forfeited to the United States.[4] A monetary instrument transported by common carrier, messenger or bailee is being transported from the time it is delivered to the common carrier, messenger or bailee through the time it is delivered to the addressee, intended recipient or agent of the addressee or intended recipient without being transported further in, or taken out of, the United States.[5]

The complaint alleges that the defendant currency is subject to forfeiture under 31 U.S.C. § 5317(c) as a sum of currency in excess of $10,000 involved in an attempted removal from the United States to Mexico without filing the required report. The complaint also alleges that the defendant currency was involved in money laundering transactions or attempted transactions in violation of 18 U.S.C. § 1956, and was furnished or intended to be furnished in exchange for controlled substances or intended to be used to facilitate violations of 21 U.S.C. § 841 and 846, or was traceable to such property.

The claim filed by claimant Alejandro Martinez-Lopez asserts, without elaboration, that he is the true owner of the defendant currency, and that he obtained the currency in the regular course of his money exchange and auto purchasing and sales business. Claimant's answer denies, without elaboration,

---

[4] 31 U.S.C. § 5317(c).

[5] 31 U.S.C. § 5317(c).

6

that the defendant currency is subject to forfeiture, that it was involved in money laundering transactions or attempted transactions, that it was involved in a transaction or attempted transaction in violation of 31 U.S.C. § 5316 and 5324(b), and that it was furnished or intended to be furnished in exchange for controlled substances used to facilitate drug trafficking offenses or traceable to such property. The Answer also denies that the tractor-trailer from which the currency was seized was traveling at a high rate of speed. Finally, the answer professes insufficient information to answer the substantive allegations of the complaint repeated above, but generally denies that the defendant currency is subject to forfeiture, and makes the bare assertion that claimant is an innocent owner.

On November 26, 2002, the United States served upon Chris Flood, Esquire, counsel of record for claimant Alejandro Martinez-Lopez, notice of a deposition upon oral examination of Alejandro Martinez-Lopez, pursuant to Fed.R.Civ.P. 26(a)(5) and 30, to be taken at the United States Attorney's Office in Harrisburg, Pennsylvania, on December 17, 2002. Attorney Flood stated that he was uncertain whether he would be able to locate the claimant in Mexico. Claimant failed to appear for the scheduled deposition, and has since failed to give any assurance of his willingness to appear for a deposition.

Claimant is a Mexican national who has never appeared in this Court in support of his claim except through counsel.

7

Witnesses in a large-scale cocaine trafficking investigation and prosecution in the Southern District of Texas have identified claimant as the source of the cocaine in which they trafficked.

Trial of the case is presently scheduled for May 2003. The discovery deadline is February 7, 2003. The deadline for dispositive motions is February 28, 2003.

III. <u>Argument</u>

**There Exists No Genuine Issue as to Any Material Fact, and the United States Is Entitled to Judgment as a Matter of Law.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." <u>Knabe v. Boury</u>, 114 F.3d 407, 410 n.4 (3d Cir. 1997). The existence of some alleged factual disputes will not defeat summary judgment; the requirement is that there be no "<u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). [Emphasis in original.] Therefore, the moving party must show two things: (1) that there are no genuine issues of material fact, and (2) that it is entitled to judgment as a matter of law. A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law. <u>Anderson</u>, 477 U.S. at 248. A dispute as to a material fact is "genuine" if the

8

evidence is such that a reasonable jury might return a verdict for the non-moving party. Id. at 257.

The Court is required to view the evidence presented in the light most favorable to the non-moving party. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990). The non-moving party's evidence must be accepted as true and all reasonable inferences must be drawn in his favor. Id. Once the moving party has presented evidence which demonstrates an absence of genuine material fact, the non-moving party may not rest only on the allegations contained in the pleadings. Fed.R.Civ.P. 56(e). Rather, the non-moving party is required to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Id. The non-moving party can make such a showing through affidavits, depositions, answers to interrogatories and the like. Id. Once Rule 56(e) shifts the burden of production to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987).

There is, on this record, no genuine issue of material fact to be tried. Claimant's "bare bones" denial of the allegations of the complaint and assertion that he is an innocent owner are insufficient to create a genuine issue of material fact, and claimant is in control of his own destiny in this regard. If he

wished to have his case decided on the merits, he should have complied with the government's entirely proper attempt to depose him, and might also have conducted some discovery on his own behalf. Refusing to do so, he cannot seriously contend that there is a <u>genuine</u> issue of material fact. This is especially so if the Court imposes sanctions in the form of an order prohibiting claimant from supporting his claims or introducing evidence.[6]

This case is particularly appropriate for summary judgment as to the complaint's allegation that the defendant currency is subject to forfeiture under 31 U.S.C. § 5317(c) as a sum of currency in excess of $10,000 involved in an attempted removal from the United States to Mexico without filing the required report. The complaint and the affidavit of Trooper Allar filed therewith aver that the driver of the tractor trailer, Jose Montelongo, informed Trooper Allar that he had traveled from Texas to New York to pick up the three trucks, which were then to be transported to Mexico for resale. Trooper Allar's training and experience in traffic safety and regulation of interstate common carriers informed him that the transport of three pickup trucks in such poor condition from New York to Mexico on a

---

[6] Obviously, this motion is moot in the event the Court grants the government's motion for sanctions in full and dismisses the claim or enters a default judgment.

flatbed truck for resale was in all likelihood not a cost effective or profitable means of transport.

During the course of the warranted search, a cardboard box containing $424,335.00 in U.S. currency was found concealed behind the rear seat of a red Nissan pickup truck being carried by the tractor trailer. This currency was divided into 20 kilogram-sized bundles sealed in plastic bags and wrapped in duct tape. Another $1,365,686.00 in U.S. currency was discovered in a metal compartment concealed under the wood planks that made up the deck of the trailer in the "fifth wheel" area, located directly under the red Nissan pickup truck, which was the front most vehicle on the trailer. This currency was divided into 41 kilogram-sized bundles sealed in plastic bags and wrapped in duct tape.

When questioned following the seizure of the defendant currency, Montelongo disclaimed any knowledge of the presence of the currency in his load, advised that the trailer had been loaded by other persons in a vacant lot in Newburgh, New York, where he had "deadheaded" from Philadelphia following his driving of a load from Houston to Philadelphia. Montelongo advised that after the trailer was loaded, secured and hitched to the tractor, he headed south and was advised by his dispatcher to proceed to Laredo, Texas, immediately across the border from Mexico.

Mexico is a major source country for illegal controlled substances entering into the United States and is also a major

11

transit route for illegal cocaine, heroin, marijuana and other controlled substances manufactured in other countries and illegally imported into the United States. Laredo, Texas is both a major point of entry for illicit drugs from Mexico into the United States and a major point of exit for drug proceeds from the United States into Mexico, due to its status as a major border crossing for tractor trailer commerce in lawful goods. Houston, Texas is a major drug transshipment city in the movement of illegal controlled substances from Mexico into the United States and north to destination cities in New York and New England.

Federal law provides that a person or an agent or bailee of such person is required to file a report when the person, agent or bailee knowingly transports, is about to transport, or has transported monetary instruments of more then $10,000 at one time from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States. 31 U.S.C. § 5316. It is an offense for any person to fail to file such a report or cause or attempt to cause a person to fail to file such a report. 31 U.S.C. § 5324(b) and (c). Any property involved in such a transaction or attempted transaction, any property traceable to such property, and any monetary instrument with respect to which a report has not been filed or any property traceable thereto may be seized and forfeited to the United States. 31 U.S.C. §

5317(c). A monetary instrument transported by common carrier, messenger or bailee is being transported from the time it is delivered to the common carrier, messenger or bailee through the time it is delivered to the addressee, intended recipient or agent of the addressee or intended recipient without being transported further in, or taken out of, the United States. 31 U.S.C. § 5317(c).

No inferences need to be drawn from these facts to establish, by a preponderance of the evidence as required by 18 U.S.C. § 983(c), that the defendant $1,790,021 was involved in an attempted removal from the United States to Mexico without filing the required report. The currency was concealed in the flatbed truck and its cargo. Montelongo stated his intention to drive the truck and its cargo to Laredo and across the border to Mexico. Montelongo either was unaware of the currency's presence in his load, as he claimed, in which case he could not have intended to file the required report, or he was aware of the currency's presence and intended to cross the border without filing the report. Regardless of whether Montelongo was the unwitting tool of some other person or persons who caused him to attempt to transport the currency across the border without filing the required report, or was himself guilty of attempting to do so, the defendant currency was involved in an attempted violation of sections 5316 and 5324(b) and (c).

13

Against this, claimant's claim and answer and supporting affidavit deny, without elaboration, that the defendant currency was involved in a transaction or attempted transaction in violation of 31 U.S.C. § 5316 and 5324(b). This is insufficient under Fed.R.Civ.P. 56(e). According to the plain language of that Rule and cases interpreting it, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial. United States v. One Single Family Residence at 2200 SW 28th Avenue, Fort Lauderdale, Florida, 204 F.Supp.2d 1361, 1363 (S.D. Fla. 2002) (citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). As long as the non-moving party as had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. One Single Family Residence, 204 F.Supp.2d at 1363 (citing Anderson, 477 U.S. at 257).

Again, to defeat a summary judgment motion by the government in a forfeiture action, "the claimant must 'come forward with significant probative evidence of material facts such that a rational jury could find for the claimant.'" United States v. Certain Real Property and Premises Known as 4003-4005 Fifth Avenue, Brooklyn, New York, 855 F.Supp. 50, 53 (E.D.N.Y. 1994) (quoting Anderson, 477 U.S. at 257). A "mere scintilla" of evidence is insufficient to defeat a summary judgment motion.

14

Anderson, 477 U.S. at 252; <u>One Single Family Residence</u>, 204 F.Supp.2d at 1363.

As to a forfeiture under 31 U.S.C. § 5317(c), claimant is incapable of producing even a "mere scintilla" of proof. Claimant's remaining claims, addressed to forfeiture of the defendant currency as property involved in money laundering or proceeds of drug trafficking, may offer a "mere scintilla" of proof, but certainly no more. They baldly assert that the currency was not involved in money laundering or drug trafficking, but do no more.

Finally, the claim and answer baldly assert that claimant is an "innocent owner" as defined in 18 U.S.C. § 983(d). As to this claim, the burden of proof is on claimant to show by a preponderance of the evidence that he (1) is an owner, and (2) either did not know of the conduct giving rise to the forfeiture or was a bona-fide purchaser of the property reasonably without knowledge of its forfeitability. 18 U.S.C. § 983(d)(2) and (3). On these facts, claimant cannot come forward with sufficient evidence such that a rational finder of fact could find in his favor.

IV. <u>Conclusion</u>

For all of the above reasons, the United States of America respectfully requests that this Honorable Court enter summary judgment in its favor against the defendant $1,790,021 in U.S. Currency and against claimant Alejandro Martinez-Lopez.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

Date: 2/25/03

THEODORE B. SMITH, III
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CIVIL NO. 1:CV-01-1084 |
| ) | |
| Plaintiff ) | |
| ) | (Judge Rambo) |
| V. ) | |
| ) | |
| $1,790,021 in U.S. CURRENCY, ) | |
| ) | |
| Defendant ) | |
| ) | |
| Alejandro Martinez-Lopez, Claimant ) | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 25th day of February, 2003, she served a copy of the attached

### BRIEF IN SUPPORT OF SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

Chris Flood, Esquire
FLOOD & FLOOD
914 Preston Avenue, Suite 800
Houston, TX   77002-1832

_/s/ Cindy J. Long_
CINDY J. LONG
Legal Assistant