## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CIVIL NO. 1:CV-01-1084 |
| | ) | |
| Plaintiff | ) | |
| | ) | (Judge Rambo) |
| v. | ) | |
| | ) | |
| $1,790,021 in U.S. CURRENCY, | ) | |
| | ) | (Filed Electronically) |
| Defendant | ) | |
| | ) | |
| Alejandro Martinez-Lopez, Claimant | ) | |

FILED

APR 0 1 2003

PER_____
HARRISBURG, PA   DEPUTY CLERK

### BRIEF IN OPPOSITION TO CLAIMANT'S
### MOTION TO SUPPRESS EVIDENCE

THOMAS A. MARINO
United States Attorney


THEODORE B. SMITH, III
Assistant United States Attorney
228 Walnut Street, Suite 220
P.O. Box 11754
Harrisburg, PA   17108-1754
(717) 221-4482
Fax: (717) 221-2246
Theodore.Smith@doj.gov
Pa Bar Id #29972

Date: April 1, 2003

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    THE MOTION TO SUPPRESS SHOULD BE DENIED BECAUSE IT
        WAS FILED IN A GROSSLY UNTIMELY MANNER. . . . . . . 7

    II.   CLAIMANT DOES NOT HAVE STANDING TO OBJECT TO THE
        SEARCH OF THE TRACTOR-TRAILER AND SEIZURE OF THE
        DEFENDANT CURRENCY, AND CANNOT SUSTAIN HIS BURDEN
        OF PROVING THE FACTS NECESSARY TO CONFER STANDING
        WITHOUT SUBMITTING TO A DEPOSITION. . . . . . . . . 9

    III. THE INSTANT MOTION TO SUPPRESS IS NOT A DISPOSITIVE
        MOTION BECAUSE, EVEN IF GRANTED, IT WOULD NOT
        DIVEST THE COURT OF JURISDICTION OVER THE DEFENDANT
        RES, AND WOULD NOT DEPRIVE THE UNITED STATES AS
        PLAINTIFF THE EVIDENCE NECESSARY TO SUSTAIN ITS
        BURDEN OF PROOF AT A TRIAL. . . . . . . . . . . . . 16

    IV.   THE CASE IS RIPE FOR DISPOSITION THROUGH THE
        GRANTING OF THE MOTION FOR SANCTIONS AND/OR MOTION
        FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES**                                                                **PAGE**

Alderman v. United States,
        394 U.S. 165, 89 S.Ct. 961 (1969)  .................. 10, 13

Box v. Petsock,
        697 F.Supp. 821 (M.D. Pa. 1987)  ....................... 10

Government of Virgin Islands v. Williams,
        739 F.2d 936 (3d Cir. 1984)  .......................... 10

Hatch v. Reardon,
        204 U.S. 152, 27 S.Ct. 188 (1907)  ..................... 9

INS v. Lopez-Mendoza,
        468 U.S. 1032, 104 S.Ct. 3479 (1984)  ................. 17

Jones v. United States,
        362 U.S. 257, 80 S.Ct. 725 (1960)  .................... 14

One 1958 Plymouth Sedan v. Pennsylvania,
        380 U.S. 693, 85 S.Ct. 1246 (1965)  .................. 16

Rakas v. Illinois,
        439 U.S. 128, 99 S.Ct. 421 (1978)  .............. 9, 10, 13

United States v. $37,780 in U.S. Currency,
        920 F.2d 159 (2d Cir. 1990)  .......................... 16

United States v. Aguirre,
        839 F.2d 854 (1st Cir. 1988)  ................... 9, 11, 15

United States v. Baker,
        221 F.3d 438 (3d Cir. 2000)  .......................... 10

United States v. Elmore,
        304 F.3d 557 (6th Cir. 2002)  ......................... 11

United States v. Five Thousand Six Hundred Eight Dollars and
Thirty Centrals ($5,608.30) in United States Coin and Currency,
        326 F.2d 359 (7th Cir. 1964)  ......................... 16

United States v. Galante,
    547 F.2d 733 (2d Cir. 1976) ............................. 9

United States v. Gomez,
    16 F.3d 254 (8th Cir. 1994) ............................. 9

United States v. Kopp,
    45 F.3d 1450 (10th Cir. 1995) ...................... 9, 11

United States v. One (1) 1971 Harley-Davidson Motorcycle,
    508 F.2d 351 (9th Cir. 1974) .......................... 17

United States v. Powell,
    929 F.2d 1190 (7th Cir. 1991) ............. 11, 12, 13, 14

United States v. Salvucci,
    448 U.S. 83, 100 S.Ct. 2547 (1980) ............. 9, 13, 14

United States v. Shaefer, Michael and Clairton Slag, Inc.,
    637 F.2d 200 (3d Cir. 1980) ........................... 13

United States v. Six Hundred Thirty-Nine Thousand Five Hundred
and Fifty-Eight Dollars ($639,558) in United States Currency,
    955 F.2d 712 (D.C. Cir. 1992) ..................... 16, 17

United States v. Smith,
    263 F.3d 571 (6th Cir. 2001) ........................... 9

United States v. United States Currency $31,828,
    760 F.2d 228 (8th Cir. 1985) .......................... 16

**STATUTES**

18 U.S.C. §1956 ........................................... 19

21 U.S.C. §841 ............................................ 19

21 U.S.C. §846 ............................................ 19

31 U.S.C. §5316 ....................................... 6, 19

31 U.S.C. §5317(c) ........................................ 19

31 U.S.C. §5324 ....................................... 6, 19

## RULES AND REGULATIONS

Fed.R.Civ.P. 26(a)(5) and 30 ............................... 18

Fed.R.Civ.P. 37 ........................................... 21

Fed.R.Civ.P. 56 ........................................... 20

## STATEMENT OF PROCEDURAL HISTORY

On June 19, 2001, the United States filed a verified complaint of forfeiture in rem against the defendant $1,790,021 in currency. On or about July 25, 2001, claimant, represented by counsel, filed a claim.  On or about August 22, 2001, claimant filed an answer.

On November 14, 2001, the Court granted a stay of proceedings, on motion of the United States, concurred in by claimant.  The stay was removed during the summer of 2002.  A case management conference was held September 12, 2002.  The case management order lists the case for non-jury trial during the May 2003 term.  The deadline for completion of discovery was February 7, 2003.  The deadline for dispositive motions was February 28, 2003.[1]

On February 4, 2003, the United States filed a motion for sanctions against claimant for his failure to attend his own

---

[1]This writer's recollection of discussions between the Court and both counsel at the case management conference is as follows: Counsel for claimant intimated that he believed a suppression motion would be "dispositive" only in the sense that if it were to be decided against him he would have no case to present on the substantive forfeiture claim, while if it were to be decided in his favor he might have some leverage to negotiate a settlement with the United States.  The undersigned, therefore, suggested that a deadline be set for the filing of a motion to suppress, well in advance of the deadline for truly dispositive motions. The Court indicated that it was not setting such a deadline but, to the extent that a truly dispositive motion might depend upon the outcome of a motion to suppress, claimant might want to file the suppression motion in advance of the deadline for dispositive motions.  Counsel indicated he would file the motion to suppress before the close of 2002.  This recollection is somewhat borne out by the undersigned's statement, in his November 26, 2002, letter to counsel (Exhibit B to Motion for Sanctions) that, "I would think that with a copy of the search warrant in your possession you would be in a position to file the anticipated suppression motion in the near future."

properly noticed deposition.  On February 4, 2003, the United States filed a brief in support of its motion for sanctions.  On February 23, 2003, the Court issued upon claimant a Rule to show cause why sanctions should not be granted.

On March 13, 2003, claimant mailed both a response to the Rule to show cause, and a "Dispositive Motion to Suppress Any and All Evidence Seized as a Result of the Unlawful Stop, Detention, Arrest and Subsequent Search of Jose Montelongo on December 29, 2000." The Court directed claimant to file a supporting brief, which claimant filed March 24, 2003.

On February 25, 2003, the United States filed its truly dispositive motion for summary judgment, a supporting statement of undisputed facts, and a supporting brief.  Nothing has been filed in opposition to the motion for summary judgment.

## STATEMENT OF FACTS

The complaint alleges the following facts:

On December 28, 2000, troopers of the Pennsylvania State Police conducted a traffic stop of a tractor trailer bearing Texas license number R1PN70, traveling south on Interstate 81 near Grantville, Pennsylvania at a high rate of speed. The flatbed trailer was loaded with three very beat up pickup trucks, which were in very poor condition. The driver of the tractor trailer, Jose Montelongo, informed Trooper Jeff Allar that he had traveled from Texas to New York to pick up the three trucks, which were then to be transported to Mexico for resale. Trooper Allar's training and experience in traffic safety and regulation of interstate common carriers informed him that the transport of three pickup trucks in such poor condition from New York to Mexico on a flatbed truck for resale was in all likelihood not a cost effective or profitable means of transport.

Trooper Allar requested and received written consent from Montelongo to search the tractor trailer, and also summoned Trooper Tom Pinkerton and his trained drug detection dog, "Dakota," to the scene of the stop. Dakota alerted, or reacted, to several areas of the trailer, including its passenger side, the area underneath the forward most vehicle being hauled on the trailer, the outside rail of the trailer, and the interior of the tractor cab. Pennsylvania State Police also recovered a bag containing a vegetable substance

3

appearing to be marijuana from an outside compartment of the tractor.[2]  Based upon the discovery of the suspected marijuana, Montelongo was taken into custody and transported to Pennsylvania State Police barracks in Harrisburg.

The Pennsylvania State Police applied for and received a Pennsylvania search warrant for the tractor trailer and its contents.  During the course of the ensuing search, a cardboard box containing $424,335.00 in U.S. currency was found concealed behind the rear seat of a red Nissan pickup truck being carried by the tractor trailer.  This currency was divided into 20 kilogram-sized bundles sealed in plastic bags and wrapped in duct tape.  $1,365,686.00 in U.S. currency was discovered in a metal compartment concealed under the wood planks that made up the deck of the trailer in the "fifth wheel" area, located directly under the red Nissan pickup truck, which was the front most vehicle on the trailer.  This currency was divided into 41 kilogram-sized bundles sealed in plastic bags and wrapped in duct tape.  The two sums of U.S. currency were seized and turned over to the Drug Enforcement Administration (DEA), and constitute the defendant res of $1,790,021.00 in this in rem civil forfeiture action.

When questioned following the seizure of the defendant currency, Montelongo disclaimed any knowledge of the presence of

---

[2]The substance was not, in fact, marijuana or any other controlled substance.

**4**

the currency in his load, advised that the trailer had been loaded by other persons in a vacant lot in Newburgh, New York, where he had "deadheaded" from Philadelphia following his driving of a load from Houston to Philadelphia. Montelongo advised that after the trailer was loaded, secured and hitched to the tractor, he headed south and was advised by his dispatcher to proceed to Laredo, Texas, immediately across the border from Mexico. Montelongo was not charged, and he and the tractor trailer were released.

Mexico is a major source country for illegal controlled substances entering into the United States and is also a major transit route for illegal cocaine, heroin, marijuana and other controlled substances manufactured in other countries and illegally imported into the United States. Laredo, Texas is both a major point of entry for illicit drugs from Mexico into the United States and a major point of exit for drug proceeds from the United States into Mexico, due to its status as a major border crossing for tractor trailer commerce in lawful goods. Houston, Texas is a major drug transshipment city in the movement of illegal controlled substances from Mexico into the United States and north to destination cities in New York and New England.

The claim filed by claimant Alejandro Martinez-Lopez asserts, without elaboration, that he is the true owner of the defendant currency, and that he obtained the currency in the regular course of his money exchange and auto purchasing and sales business.

Claimant's answer denies, without elaboration, that the defendant currency is subject to forfeiture, that it was involved in money laundering transactions or attempted transactions, that it was involved in a transaction or attempted transaction in violation of 31 U.S.C. § 5316 and 5324(b), and that it was furnished or intended to be furnished in exchange for controlled substances used to facilitate drug trafficking offenses or traceable to such property. The Answer also denies that the tractor-trailer from which the currency was seized was traveling at a high rate of speed. Finally, the answer professes insufficient information to answer the substantive allegations of the complaint repeated above, generally denies that the defendant currency is subject to forfeiture, and makes the bare assertion that claimant is an innocent owner.   Neither the answer nor any other document of record provides any information as to ownership of the tractor-trailer and load from which the defendant currency was seized.

Claimant has failed to appear for a deposition, and has since failed to give any assurance of his willingness to appear for a deposition.   He is a Mexican national who has never appeared in this Court in support of his claim except through counsel.  Counsel has repeatedly expressed uncertainty whether he can even locate claimant in Mexico.

## ARGUMENT

### I.   THE MOTION TO SUPPRESS SHOULD BE DENIED BECAUSE IT WAS FILED IN A GROSSLY UNTIMELY MANNER.

Trial is scheduled for May 2003.  The deadline for completion of discovery was February 7, 2003.  The deadline for dispositive motions was February 28, 2003.  Claimant, in titling his present motion a "dispositive" motion, acknowledges that it was due no later than February 28, 2003.[3]  Nevertheless, it was filed two weeks late, on March 14, 2003, and only after a Rule was issued upon claimant to show cause why the government's motion for sanctions should not be granted.  It was filed without a supporting brief, without which it would have been deemed withdrawn under Rule 7.5 of the Rules of Court for the United States District Court for the Middle District of Pennsylvania (hereinafter "LR").  Thus, the untimely-filed motion did not become ripe for response by the United States until March 24, 2003, when claimant complied with the Court's Order directing him to comply with LR 7.5.

Thus, with trial scheduled for May 2003, with discovery not yet commenced, much less completed, and with plaintiff's motions for sanctions and for summary judgment before the Court, the Court

---

[3]Actually, it was due to be filed well in advance of the deadline for dispositive motions, since it would be necessary to obtain suppression of evidence prior to filing a dispositive motion asserting the absence of the evidence as a basis for finding no genuine issue of material fact.  See Footnote 1, supra.  Also, see Argument Section III, regarding why the instant motion is not, in fact, a dispositive motion.

is now asked to rule upon a motion to suppress evidence which, if granted, would completely upset the schedule the Court and the parties agreed upon last September for the orderly and efficient disposition of this case.  As stated below, in Argument Section II, the untimely-filed suppression motion cannot fairly be decided without conducting additional discovery, and claimant is entirely responsible for the fact that no meaningful discovery has taken place to date.

Based upon the above, there is simply no way this case can proceed to trial in May 2003 if the Court should grant the motion to suppress evidence.  The United States is absolutely entitled to take the deposition of claimant, and to follow that deposition up with additional discovery, and claimant has deprived the United States of the opportunity to do these things.  This is why the Court holds case management conferences and enters case management orders, and this is why those orders incorporate the agreement of the Court and the parties as to deadlines for discovery and dispositive motions.  The United States has complied with these deadlines, and claimant's refusal to do so upsets the entire schedule agreed upon last fall.  Under these circumstances, the Court would not be committing an abuse of its discretion if it were to refuse to entertain claimant's suppression motion on the merits.

## II.  CLAIMANT DOES NOT HAVE STANDING TO OBJECT TO THE SEARCH OF THE TRACTOR-TRAILER AND SEIZURE OF THE DEFENDANT CURRENCY, AND CANNOT SUSTAIN HIS BURDEN OF PROVING THE FACTS NECESSARY TO CONFER STANDING WITHOUT SUBMITTING TO A DEPOSITION.

Claimant has the burden of establishing his standing to assert a Fourth Amendment violation.  United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988); United States v. Galante, 547 F.2d 733, 738 (2d Cir. 1976); United States v. Smith, 263 F.3d 571, 582 (6th Cir. 2001); United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994); United States v. Kopp, 45 F.3d 1450, 1452 (10th Cir. 1995). See United States v. Salvucci, 448 U.S. 83, 86, 100 S.Ct. 2547, 2550 (1980) ("[I]t is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he  ...establish, that he himself was the victim of an invasion of privacy," quoting Hatch v. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 190 (1907)).  See also Rakas v. Illinois, 439 U.S. 128, 130-31, 99 S.Ct. 421, 423-24 (1978) (Where defense did not contest prosecution's factual assertion that defendants did not own automobile or rifle and shells found therein, but merely contended they were not required to prove ownership in order to object to search, there would be no remand for determination of ownership of seized rifle and shells).

Fourth Amendment rights are personal rights that may not be asserted vicariously.  Rakas, 439 U.S. at 133-34, 99 S.Ct. at 425. "A person who is aggrieved by an illegal search and seizure only

9

through the introduction of damaging evidence secured by a search

of a third person's premises or property has not had any of his

Fourth Amendment rights infringed." Id. (citing Alderman v. United

States, 394 U.S. 165, 173 n.6, 89 S.Ct. 961, 966 (1969)).  Only

defendants whose own Fourth Amendment rights have been violated may

benefit from the protections of the exclusionary rule.  Rakas, 439

U.S. at 133-34, 99 S.Ct. at 425.[4]

"An essential element to a successful challenge of a search

and seizure ... on Fourth Amendment grounds is the existence of a

legitimate expectation of privacy...." Box v. Petsock, 697 F.Supp.

821, 827 (M.D. Pa. 1987) (quoting Government of Virgin Islands v.

Williams, 739 F.2d 936, 938 (3d Cri. 1984)).  "There is, however,

no recognition of the legitimacy of a defendant's expectations of

privacy where the area searched is in the control of a third

party...." Id.

"It is clear that a passenger in a car that he neither owns

nor leases typically has no standing to challenge a search of the

car." United States v. Baker, 221 F.3d 438, 441-42 (3d Cir. 2000)

(citing Rakas).  Here, claimant was not even a passenger; and he

does not even claim, much less demonstrate, that he was the owner

of the vehicle searched.  One who neither owns, rents, legitimately

---

[4]The Supreme Court in Rakas also stated that these
principles are best analyzed by focusing "on the extent of a
particular defendant's rights under the Fourth Amendment, rather
than on any theoretically separate, but invariably intertwined
concept of standing."  439 U.S. at 139, 99 S.Ct. at 428.

possesses, nor controls access to a vehicle does not have standing to object to a search of that vehicle. Aguirre, 839 F.2d at 856-57; Kopp, 45 F.3d at 1452.

Not even ownership of a vehicle necessarily confers standing to move to suppress evidence seized from such vehicle. United States v. Elmore, 304 F.3d 557, 560-61 (6th Cir. 2002); United States v. Powell, 929 F.2d 1190, 1194-96 (7th Cir. 1991). Powell is particularly instructive here. In Powell, a Utah state trooper stopped a camper-topped pickup truck for an ostensible traffic violation, which the court determined not to be a violation. Id. at 1193. One thing led to another, and the trooper ultimately seized a large quantity of marijuana hidden in the bed of the truck and the roof of the camper top. Id. at 1192. The truck was owned by Powell, whose name the case bears, and who lived in Wyoming, but it was driven by one Maroda. Id. at 1191. Of course, following his arrest Maroda informed the police that the marijuana belonged to Powell and was bound for faraway Wisconsin. Id. at 1194.

Curiously--perhaps to underscore the importance of the Fourth Amendment standing determination--the court began its analysis by concluding that the vehicle stop was without probable cause, the failure to signal before entering a highway not being a violation of Utah vehicle law. Id. at 1193-94. Only after finding that Maroda's constitutional rights were violated by the unlawful stop did the court turn to the question whether Powell, the named

11

defendant, had Fourth Amendment standing to move to suppress the fruits of the unlawful seizure and ensuing search. Id. at 1194-96.

The court cautioned that Fourth Amendment standing determinations are necessarily fact-bound and, therefore, that it is difficult to formulate bright line rules. Id. at 1195. But the court continued:

> No bright line is needed, however, to decide this case. Powell gave his truck to Maroda not for a drive around the block but for a three-day, 2,000 mile journey across the better part of the continental United States. At the time Officer Haycock stopped Maroda, Powell was over 1,000 miles from the point in southern Utah where the constitutional violation occurred and two days from Maroda's expected arrival. The portion of the detention of the truck that occurred before Officer Haycock came reasonably to suspect that Maroda might be carrying drugs did not meaningfully deprive Powell of the use of his truck. To be sure, actions taken by Haycock and other law enforcement personnel occurring after the glimpse of the false floor and ceiling of the camper back and the whiff of marijuana did implicate Powell's constitutional rights, as discussed below. However, since he was not at the scene of the stop at the time it occurred, his interest in using the highways undisturbed by random and intrusive police action and the anxiety it causes was not implicated by the search. The only anxiety the stop caused Powell came with the knowledge that the fruits Officer Haycock obtained through his violation of Maroda's Fourth Amendment rights were used as the basis for Powell's arrest and might be introduced as evidence against him at trial. As such, Powell's motion to dismiss this evidence is nothing more than an "attempt[ ] to vicariously assert violations of the Fourth Amendment rights of others" that Alderman and its progeny have condemned. Salvucci, 448 U.S. at 86, 100 S.Ct. at 2550.

Powell, 929 F.2d at 1195-96.

The above passage is precisely descriptive of claimant's Fourth Amendment challenge here. Claimant's motion asks the Court "to suppress all evidence obtained as a result of the unlawful

12

stop, detention, arrest and subsequent search of a vehicle driven
by Jose Montelongo," but points to no Fourth Amendment violation
personal to claimant Alejandro Martinez-Lopez. (Motion to Suppress
at 1.) Thus, claimant is attempting vicariously to assert the
Fourth Amendment rights of another, something <u>Alderman</u>, <u>Rakas</u>,
<u>Salvucci</u> and their progeny do not permit.

    <u>United States v. Shaefer, Michael and Clairton Slag, Inc.</u>, 637
F.2d 200 (3d Cir. 1980), cited by claimant, is readily
distinguishable. There, unlike here, the truck was owned by the
corporation asserting the Fourth Amendment violation, and the
search and seizure took place while the truck was being used to
further the defendant corporation's business. <u>Id.</u> at 202.

    Even if there were evidence that the tractor trailer driven by
Jose Montelongo in the instant case was owned by claimant, <u>Shaefer,
Michael and Clairton Slag</u> would be readily distinguishable; for the
tractor trailer Montelongo drove was, like the truck Maroda drove
in <u>Powell</u>, entrusted to him "not for a drive around the block but
for a [two-day, 1,500] mile journey across the better part of the
continental United States." See <u>Powell</u>, 929 F.2d at 1195. "At the
time [Trooper Allar] stopped [Montelongo, claimant] was over 1,000
miles from the point in [south-central Pennsylvania] where the
[alleged] constitutional violation occurred and two days from
[Montelongo's] expected arrival." <u>Id.</u> at 1195-96. "The portion of
the detention of the truck that occurred before [Trooper Allar]

came reasonably to suspect that [Montelongo] might be carrying drugs did not meaningfully deprive [claimant] of the use of his truck." Id. at 1196. "[S]ince he was not at the scene of the stop at the time it occurred, his interest in using the highways undisturbed by random and intrusive police action and the anxiety it causes was not implicated by the search." Id. at 1196. "As such, [claimant's] motion to dismiss this evidence is nothing more than an 'attempt to vicariously assert violations of the Fourth Amendment rights of others.'" Id. at 1196.

Nor does the "automatic standing" rule announced in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725 (1960) confer Fourth Amendment standing upon claimant. It does not, for two reasons: First, the United States has not charged claimant with any offense, much less one for which possession of the defendant currency is an essential element. Second, and more important, Jones's automatic standing rule was abrogated by the Supreme Court in Salvucci, 448 U.S. at 85, 100 S.Ct. at 2549. In overruling Jones, the Supreme Court in Salvucci held that even a defendant charged with possessing property constituting fruits of a search could move to suppress those fruits only if his own Fourth Amendment rights were violated. 448 U.S. at 85-87, 100 S.Ct. at 2549-50.

As stated in Powell, Fourth Amendment standing inquiries are fact-specific. 929 F.2d at 1195. Among the "factors which are pertinent to this threshold inquiry [are] ownership, possession,

14

and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case." Aguirre, 839 F.2d at 856-57 (citing Gomez, 770 F.2d at 254).

Claimant bears the burden of marshaling these factors to demonstrate that his Fourth Amendment rights were violated; yet claimant steadfastly refuses to be deposed or to participate in any meaningful discovery. He is incapable of sustaining his burden of proof here without submitting to the deposition the United States has been trying to take since November. Such a deposition would disclose claimant's ownership or non-ownership of the tractor trailer and its cargo, his lack of possession and control, his historical use or non-use, his inability to regulate access from several thousand miles away, the nonexistence of a subjective expectation of privacy, and the objective unreasonableness of any expectation of privacy he might have harbored.

As stated below, in Argument Section IV, this makes the case ripe for disposition through the granting of the motion for sanctions. Rather than comply with the discovery requests that prompted the motion for sanctions, however, claimant has elected to file an untimely motion to suppress evidence. Since he has chosen

**15**

to move to suppress evidence, and bears the burden of proof on the
Fourth Amendment standing issue, the suppression motion should be
denied because he has not sustained, and cannot sustain, his
burden.

**III. THE INSTANT MOTION TO SUPPRESS IS NOT A DISPOSITIVE
MOTION BECAUSE, EVEN IF GRANTED, IT WOULD NOT DIVEST THE
COURT OF JURISDICTION OVER THE DEFENDANT RES, AND WOULD
NOT DEPRIVE THE UNITED STATES AS PLAINTIFF THE EVIDENCE
NECESSARY TO SUSTAIN ITS BURDEN OF PROOF AT A TRIAL.**

When illegally seized property is itself the defendant in a
civil forfeiture proceeding, it may not be "relied upon to sustain
a forfeiture." One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S.
693, 697, 85 S.Ct. 1246, 1249 (1965); United States v. United
States Currency $31,828, 760 F.2d 228, 230 (8th Cir. 1985).  Such
property, however, is not "excluded" from the proceeding entirely.
United States v. Six Hundred Thirty-Nine Thousand Five Hundred and
Fifty-Eight Dollars ($639,558) in United States Currency, 955 F.2d
712, 715 n.5 (D.C. Cir. 1992); United States v. $37,780 in U.S.
Currency, 920 F.2d 159, 163 (2d Cir. 1990).  "Such property may be
offered into evidence for the limited purpose of establishing its
existence, and the court's in rem jurisdiction over it." $639,558
in United States Currency, 955 F.2d at 715 n.5.  Even assuming
property was seized illegally, the district court has jurisdiction
over the property in a forfeiture action.[5]  United States v. Five

---

[5]The undersigned believes counsel for claimant does not
disagree with this legal proposition, notwithstanding his
characterization of the instant suppression motion as

Thousand Six Hundred Eight Dollars and Thirty Cents ($5,608.30) in United States Coin and Currency, 326 F.2d 359, 361 (7ᵗʰ Cir. 1964) (collecting cases).

In other words, as the Supreme Court suggested in INS v. Lopez-Mendoza, 468 U.S. 1032, 1041, 104 S.Ct. 3479, 3484 (1984), the fact that defendant property was seized after an illegal search does not "immunize" it from forfeiture, any more than a defendant illegally arrested is immunized from prosecution. $639,558 in United States Currency, 955 F.2d at 715 n.5. Other evidence, legally obtained, may be introduced to establish that the property should be forfeited to the government. Id.; United States v. One (1) 1971 Harley-Davidson Motorcycle, 508 F.2d 351 (9ᵗʰ Cir. 1974).

Here, the United States is in possession of an enormous quantity of evidence of the defendant currency's forfeitability, independent of evidence gained as a result of the search.[6] If the Court were to grant the suppression motion, the United States would in all likelihood need additional time to prepare for trial, but suppression of the evidence gained as a result of the vehicle stop and search would not render its proof insufficient.

---

"dispositive."

[6]None of such evidence is presently of record in the instant case, so the undersigned will refrain from discussing it specifically. Counsel for claimant is familiar with much of this evidence, as he represented a defendant charged in the Southern District of Texas prosecutions.

## IV.    THE CASE IS RIPE FOR DISPOSITION THROUGH THE GRANTING OF THE MOTION FOR SANCTIONS AND/OR MOTION FOR SUMMARY JUDGMENT.

As stated above, in Argument Section II, claimant's response to the Rule to show cause why sanctions should not be granted--that his deposition is not necessary in order to litigate a suppression motion--is unsatisfactory.  This is a civil case; and while the United States has not attempted to persuade the Court that suppression is unavailable generally in civil forfeiture cases, it steadfastly maintains its right to litigate the case as a civil case, rather than under the "trial by surprise" rules that generally prevail in criminal cases.  Thus, it is entitled to conduct discovery, and in particular to depose claimant, prior to litigating a suppression motion.

This is especially so because there exists such a substantial issue as to whether claimant can prove he has Fourth Amendment standing.  Even assuming claimant would be willing to attend and testify at a suppression hearing in order to sustain his burden of proof on the standing issue, the United States is entitled under Fed.R.Civ.P. 26(a)(5) and 30 to depose him and conduct further discovery on the factual matters implicated by such testimony, prior to the holding of such a hearing.  Because the United States is entitled to take such a deposition and conduct further discovery on Fourth Amendment standing and other factual issues raised by the motion to suppress, claimant is incorrect when he asserts his

**18**

deposition is not necessary in order to resolve the suppression motion.

While the motion for sanctions provides a sufficient basis for the dismissal of the claim, there exists an even more compelling basis for doing so:  The entire factual basis for the forfeiture alleged in the complaint is now undisputed, pursuant to LR-56.1. It is now an undisputed fact that the defendant currency is property involved in a transaction or attempted transaction in violation of 31 U.S.C. §§ 5316 and 5324(b) and (c), or is property traceable to such property, or is a monetary instrument with respect to which a report has not been filed or property traceable thereto, subject to forfeiture under 31 U.S.C. § 5317(c). (Plaintiff's Statement of Undisputed Material Facts, ¶ 22.)  It is also undisputed that the defendant $1,790,021 in U.S. Currency was involved in violations of 18 U.S.C. §1956, Laundering of Monetary Instruments, or is traceable to property involved in such transactions or attempted transactions.  (Plaintiff's Statement of Undisputed Material Facts, ¶ 23.)  It is also undisputed that the defendant $1,790,021 in U.S. Currency constitutes monies furnished or intended to be furnished in exchange for controlled substances, proceeds traceable to such an exchange or exchanges, or monies intended to be used to facilitate violations of 21 U.S.C. § 841 and 846.  (Plaintiff's Statement of Undisputed Material Facts, ¶ 24.) By not responding to plaintiff's motion for summary judgment and

**19**

plaintiff's statement of undisputed material facts, claimant is deemed to have admitted those facts.

Claimant has been given every opportunity to comply with the discovery obligations imposed upon him by the Federal Rules of Civil Procedure, to comply with the Court's case management Order, and to comply with Fed.R.Civ.P. 56 and LR-56.1 in opposing summary judgment. His failure to comply with any one of these obligations--to submit to discovery, to timely file his suppression motion, and to respond to the summary judgment motion and statement of undisputed material facts--would be sufficient, in and of itself, to justify the Court's exercising its discretion to grant dispositive relief to the United States. In addition, however, claimant's motion to suppress evidence should be denied because he has not sustained, and cannot sustain, his burden of proof as to Fourth Amendment standing, and because the facts of record demonstrate that he does not have standing.

20

## CONCLUSION

For all of the above reasons, the United States of America respectfully requests that this Honorable Court deny claimant's motion to suppress evidence, both on the ground that claimant lacks standing to assert such a motion, and on the ground that the motion was not timely filed; that under Fed.R.Civ.P. 37 the Court impose the sanction of dismissal of the claim; and that the Court enter summary judgment against the defendant $1,790,021 in U.S. Currency and against claimant Alejandro Martinez-Lopez.

Respectfully submitted,

THOMAS A. MARINO
United States Attorney

Date: April 1, 2003

THEODORE B. SMITH, III, AUSA
U.S. Attorney's Office
228 Walnut Street
Harrisburg, PA 17108
(717) 221-4482
Fax: (717) 221-2246
Theodore.Smith@usdoj.gov
PA Id #29972

21

## CERTIFICATE OF COMPLIANCE

This brief contains 4,978 words and complies with Middle District of Pennsylvania Local Rule 7.8(b)(2).


THEODORE B. SMITH, III
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CIVIL NO. 1:CV-01-1084 |
| ) | |
| Plaintiff ) | |
| ) | (Judge Rambo) |
| v. ) | |
| ) | |
| $1,790,021 in U.S. CURRENCY, ) | |
| ) | |
| Defendant ) | |
| ) | |
| Alejandro Martinez-Lopez, Claimant ) | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 1st day of April, 2003, she served a copy of the attached

### BRIEF IN OPPOSITION TO CLAIMANT'S
### MOTION TO SUPPRESS EVIDENCE

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

Chris Flood, Esquire
FLOOD & FLOOD
914 Preston Avenue, Suite 800
Houston, TX   77002-1832

CINDY J. LONG
Legal Assistant