IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL NO. 1:CV-01-1084** |
| **Plaintiff** | : | |
| v. | : | |
| **$1,790,021 IN U.S. CURRENCY,** | : | |
| **Defendant** | : | |
| | : | |
| **Alejandro Martinez-Lopez, Claimant** | : | |

# **M E M O R A N D U M**

Before the court are the following motions: (1) Plaintiff's motion for sanctions for failure of party to attend his own deposition; (2) Plaintiff's motion for summary judgment; and (3) Claimant's motion to suppress any and all evidence seized as a result of the unlawful stop, detention, arrest and subsequent search of Jose Montelongo on December 29, 2000. The parties have briefed the issues, and the motions are ripe for disposition.

**I.**     **Background**

  **A.**     **Facts**

The captioned action is an *in rem* forfeiture action brought by Plaintiff, the United States of America, against the Defendant, $1,790,021.00 in United States currency. On June 19, 2001, Plaintiff filed a verified complaint which alleges the following undisputed facts:[1] On December 28, 2000, troopers of the Pennsylvania

---

[1] Claimant does not dispute the facts in the instant case. In support of its motion for summary
(continued...)

State Police conducted a traffic stop of a tractor-trailer bearing a Texas license plate. The tractor-trailer was traveling south on Interstate 81 near Grantville, Pennsylvania at a high rate of speed. The flatbed trailer was loaded with "three very beat up pickup trucks, which were in poor condition." (Compl. at ¶ 5(b).) The driver of the tractor-trailer, Jose Montelongo, informed Trooper Jeff Allar that he had traveled from Texas to New York to transport the three pickup trucks to Mexico for resale. Based on his training and experience, Trooper Allar knew that the transport of three pickup trucks in such poor condition from New York to Mexico was not an effective or profitable means of transport.

Trooper Allar requested and received written consent from Montelongo to search the tractor-trailer. Trooper Allar summoned another trooper and his trained drug detection dog, "Dakota." Dakota alerted, or reacted, to several areas of the trailer, including its passenger side, the area underneath the front-most pickup truck being hauled, the outside rail of the trailer, and the interior of the tractor cab. The Pennsylvania State Police ("PSP") recovered a bag containing a vegetable substance, from an outside compartment of the tractor. At the time, the PSP believed the vegetable substance to be marijuana.[2] Based upon the discovery of the suspected

---

[1](...continued)
judgment, the United States filed a statement of undisputed facts. Claimant has chosen not to respond to the United States' motion for summary judgment. Middle District Local Rule 7.6 states in relevant part, "[a]ny respondent who fails to [file a brief in opposition to any pretrial motion] shall be deemed not to oppose such motion." Thus, Claimant is deemed not to oppose the United States' motion for summary judgment, and by extension is deemed not to oppose the United States' statement of material facts. Accordingly, the court adopts Plaintiff's statement of undisputed material facts in deciding whether Plaintiff is entitled to judgment as a matter of law.

[2]After being subjected to laboratory analysis, the vegetable substance was determined *not* to be marijuana or any other controlled substance.

2

marijuana, Montelongo was taken into custody and transported to the PSP's barracks in Harrisburg, Pennsylvania.

Based on the aforementioned information, the PSP applied for and received a search warrant for the tractor-trailer and its contents. During the course of the search, the PSP discovered a cardboard box containing $424,335.00 in United States currency concealed behind the rear seat of one of the pickup trucks. The currency was divided into twenty bundles sealed in plastic bags and wrapped in duct tape. The PSP also found $1,265,686.00 in a metal compartment concealed under the wood planks which made up the deck of the trailer. This currency was divided into forty-one bundles and wrapped in the same manner as the first cache of currency. The PSP turned over these two sums of currency to the United States Drug Enforcement Agency. Collectively, the sums amount to $1,790,021.00 and make up the *res* of the captioned forfeiture action.

When questioned following the seizure of the currency, Montelongo disclaimed any knowledge of its presence and informed the PSP that the trailer had been loaded by other persons in a vacant lot in Newburgh, New York. Montelongo also stated that after the trailer was loaded and hitched to his tractor, he headed south and was advised by his dispatcher to proceed to Laredo, Texas. Montelongo was not charged by either the PSP or the United States. He and the tractor-trailer were released.

Laredo, Texas is both a major point of entry for illicit drugs from Mexico into the United States and a major point of exit for drug proceeds from the United States into Mexico. The Government, in an uncontested statement of material facts, states "[e]ither Montelongo or such person or persons as caused or attempted

to cause him to transport the defendant currency to Mexico without filing a report required by 31 U.S.C. § 5316,[3] committed an offense under 31 U.S.C. § 5324(b) and (c).[4]" (Govt. St. Mat. Facts at ¶ 21.) Moreover, Defendant currency is property involved in a transaction or an attempted transaction in violation of 31 U.S.C. §§ 5316 and 5324(b) and (c), or is property traceable to such property, or is a monetary instrument with respect to which a report has not been filed or property traceable thereto, subject to forfeiture under 31 U.S.C. § 5317(c)[5]. Defendant currency was involved in violations of 18 U.S.C. § 1956[6] as a sum of money involved in money laundering transactions or attempted transactions, and was furnished or intended to be furnished in exchange for controlled substances or intended to be used to facilitate violations of 21 U.S.C. §§ 841 and 846[7], or traceable to such property.

### B.   **Procedural Background**

---

[3] 31 U.S.C. § 5316 defines the reporting requirements for importing and exporting monetary instruments to and from the United States. Generally, anyone who knowingly transports, is about to transport, or has transported monetary instruments of more than $10,000 at one time must file a report with the Secretary of the Treasury.

[4] 31 U.S.C. § 5324(b), in relevant part, prohibits an individual from failing to file a report under § 5316, or causing another person to file such a report under that section for the purposes of evading the reporting requirements. Section 5324(c) states that whoever violates § 5324 shall be fined and imprisoned for not more than five years. That section also provides enhanced penalties for aggravated cases.

[5] 31 U.S.C § 5317(c) states, in relevant part: "If a report required under section 5316 with respect to any monetary instrument is not filed . . . the instrument and any interest in property, including a deposit in a financial institution, traceable to such instrument may be seized and forfeited to the United States Government. . . ."

[6] 18 U.S.C. § 1956 deals with the laundering of monetary instruments.

[7] 21 U.S.C § 841 deals generally with the knowing distribution, manufacture, possession, or dispensing of a controlled substance. Section 846 deals, *inter alia*, with an attempted violation of § 841.

On July 25, 2001, Claimant, Alejandro Martinez-Lopez, filed a claim which asserts, without elaboration, that he is the true owner of the Defendant currency, and that he obtained the currency in the regular course of his money exchange and auto purchasing and sales business.  On August 8, 2001, Claimant filed an answer wherein he denies without elaboration, that Defendant currency is subject to forfeiture.  The answer also denies that the tractor-trailer was traveling at a high rate of speed.

On November 26, 2002, Plaintiff served upon Claimant's attorney, notice of deposition upon oral examination of Claimant pursuant to Rules 26(a)(5) and 30 of the Federal Rules of Civil Procedure.  That deposition was scheduled to take place on December 17, 2002 in the United States Attorney's office in Harrisburg, Pennsylvania.  On December 11, 2002, Claimant's attorney contacted Plaintiff's counsel and stated that he was uncertain that he would be able to locate Claimant, a Mexican national, in Mexico, and that counsel himself had a schedule conflict with the date set for the deposition.  Plaintiff's counsel indicated his willingness to reschedule the deposition so long as Claimant's counsel could represent that Claimant would attend the rescheduled deposition.  Plaintiff's counsel memorialized the December 11, 2002 telephone conversation in a letter dated December 12, 2002.  (*See* Pl. Ex. C. in Supp. of Mot. for Sum. J.)

On February 4, 2003, Plaintiff filed the instant motion for sanctions for failure of party to attend his own deposition.  Claimant never responded to said motion and on February 23, 2003, the court issued a show cause order upon Claimant why the requested sanctions should not be granted.  On March 13, 2003, Claimant filed a response to the court's February 23, 2003 order and a document

titled "Dispositive Motion to Suppress Any and All Evidence Seized as a Result of the Unlawful stop, Detention, Arrest and Subsequent Search of Jose Montelongo on December 29, 2000." On February 25, 2003, Plaintiff filed its motion for summary judgment and accompanying brief.

**II.     Discussion**

   **A.     Claimant's motion to suppress**

In response to Plaintiff's motion for sanctions, Claimant filed, concurrently with his response to the court's February 23, 2003 show cause order, a dispositive motion to suppress the evidence obtained by the search and seizure of Jose Montelongo's tractor-trailer on December 29, 2000. By order dated March 17, 2003, the court directed Claimant to brief the issue of his standing to request suppression, as well as the merits of said motion. As to the standing issue, Claimant argues that as an injured party who has a possessory or property interest in the *res* at issue, he has standing to request suppression of evidence obtained as a result of an illegal detention, search, arrest or seizure of a third party. Substantively, Claimant argues that his motion to suppress should be granted because (1) the detention of Jose Montelongo exceeded the scope of the initial investigation, (2) Montelongo's consent was not voluntary, (3) the search of the vehicle by the PSP exceeded the scope of the alleged consent, (4) Montelongo was arrested without a warrant and without probable cause, and (5) seizure of the Defendant currency is fruit of the PSP's unlawful search.

Plaintiff argues that Claimant's motion to suppress should be denied because(1) it was filed in a grossly untimely manner, (2) Claimant does not have

standing, and (3) even if the instant motion were granted, it would not divest the court of jurisdiction over the instant *res* and would not deprive Plaintiff of the evidence necessary to sustain its burden of proof at trial.  For the reasons that follow, the court finds that Claimant does not have standing to request suppression of evidence obtained in violation of a third party's constitutional rights.[8]  Accordingly, the court will deny Claimant's motion to suppress.

Claimant has the burden of establishing his standing to assert a Fourth Amendment violation.  *See United States v. Smith,* 263 F.3d 571, 582 (6th Cir. 2001); *United States v. Kopp*, 45 F.3d 1450, 1452 (10th Cir. 1995); *United States v. Gomez,* 16 F.3d 254, 256 (8th Cir. 1994); *United States v. Aguirre*, 839 F.2d 854, 856 (1st Cir. 1988).  Moreover, "it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he . . . establish that he himself was the victim of the invasion of privacy." *United States v. Salvucci.* 448 U.S. 83, 86 (1980).  This requirement, often labeled Fourth Amendment standing, is rooted in the principle "that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States,* 394 U.S. 165, 171-72 (1969).  Fourth Amendment rights are personal rights that may not be asserted vicariously. *Rakas v. Illinois,* 439 U.S. 128, 130-31 (1978).  "An essential element to a successful challenge of a search and seizure . . . on Fourth Amendment grounds is the existence of a legitimate expectation of privacy. . . ." *Government of Virgin*

---

[8] Because the court finds that Claimant does not have standing to request suppression, the court will not address the substantive question of whether Montelongo's stop, arrest and the PSP's search and seizure were unlawful.

*Islands v. Williams,* 739 F. 2d 936, 938 (3d Cir. 1984). However, there can be no legitimate expectation of privacy "where the area searched is in the control of a third party." *Id.*

In the instant case, even assuming the stop in question and Montelongo's subsequent arrest violated the Fourth Amendment, Claimant has failed to establish that any of his personal, legitimate expectations of privacy were violated by the PSP's actions. The Claimant himself indicates:

> [T]he Government makes no argument or suggestion that [Claimant] was present at the time of the seizure, had knowledge of the seizure, or had any knowledge of any of the surrounding circumstances or facts relating to the stop, search, arrest or detention of Jose Montelongo, the individual who was actually operating the tractor-trailer in Pennsylvania when he was arrested and the funds in question seized.

(Claimant's Resp. to Show Cause Order at ¶ 4.)

Thus, Claimant has essentially admitted that he relinquished possession of his alleged property – the Defendant currency – to Montelongo and, therefore had no legitimate expectation of privacy with respect to said property. Moreover, the instant case is similar to the situation addressed by the Seventh Circuit in *United States v. Powell*, 929 F.2d 1190 (7th Cir. 1991). In *Powell*, a Utah state trooper stopped a camper-topped pickup truck for an ostensible traffic violation. Ultimately, the trooper seized a large quantity of marijuana hidden in the bed of the truck and the roof of the camper top. The truck was owned by Powell – who lived in Wyoming and was in that state at the time the stop occurred – but was driven by Maroda. Following his arrest, Maroda informed the police that the marijuana belonged to Powell and was bound for Wisconsin. Maroda cooperated with the police who subsequently arrested Powell. At trial, Powell moved for suppression of the evidence

because of the unlawful stop.  The trial court denied Powell's motion to suppress because it found the stop not to be pretextual, and thus constitutional.  *Id.* at 1193.

The Seventh Circuit reversed the district court's finding that the stop was constitutional and held instead that the trooper did not have probable cause.  *Id.* at 1194.  After finding that Maroda's rights were violated by the unlawful stop, the court found that Powell did not have standing to move to suppress the fruits of the unlawful search.  The court stated:

> Powell gave his truck to Maroda not for a drive around the block but for a three-day, 2,000 mile journey across the better part of the continental United States.  At the time [the trooper] stopped Maroda, Powell was over 1,000 miles from the point in southern Utah where the constitutional violation occurred and two days from Maroda's expected arrival.  The portion of the detention of the truck that occurred before [the trooper] came reasonably to suspect that Maroda might be carrying drugs did not meaningfully deprive Powell of the use of his truck. . . . [] [S]ince he was not at the scene of the stop at the time it occurred, his interest in using the highways undisturbed by random and intrusive police action and the anxiety it causes was not implicated by the search.  The only anxiety that the search caused Powell came with the knowledge that the fruits [the trooper] obtained through his violation of Maroda's Fourth Amendment rights were used as a basis for Powell's arrest and might be introduced as evidence against him at trial.  As such, Powell's motion to dismiss this evidence is nothing more than an "attempt [] to vicariously assert violations of the Fourth Amendment rights of others. . . ."

*Id.* at 1195-96 (quoting *Salvucci*, 448 U.S. at 86).

Claimant's motion to suppress is nearly identical to the factual scenario in *Powell*.  Claimant seeks suppression of the fruits of an allegedly unconstitutional search, but points to no Fourth Amendment violation personal to Claimant.  Instead, Claimant argues that Officer Allar did not have probable cause to stop Montelongo's tractor-trailer and that Montelongo's consent was involuntary.  Thus, Claimant is

9

attempting vicariously to assert the Fourth Amendment rights of another – Montelongo – something that the Supreme Court's Fourth Amendment jurisprudence does not allow.  *See Salvucci*, 448 U.S. at 86; *Rakas,* 439 U.S. at 133-34; *Alderman,* 394 U.S. at 172, n. 6.

Claimant argues that he has standing to request suppression because he has a property interest in the items which were seized.  Claimant relies on the Third Circuit Court of Appeals' ruling in *United States v. Shaefer, Michael and Clairton Slag, Inc.,* 637 F.2d 200 (3d Cir. 1980).  In that case, the Third Circuit reversed the district court's decision that no evidentiary hearing regarding suppression issues was required, and addressed the Government's argument that Defendants lacked standing to challenge the documentary evidence because they were not present at the time the seizure occurred.  *Id.* at 202.  The underlying facts of *Clairton Slag*, demonstrate why that case is distinguishable from the instant matter.  *Id.*

The evidence at trial showed that in the fall of 1977 the PSP was investigating the possibility that Clairton Slag, Inc., a manufacturer of asphalt paving materials, was "short-weighing" asphalt it supplied for a road construction project in Washington County, Pennsylvania.  Shaefer was the president of Clairton Slag, Inc., and individually owned the trucks that delivered its products. In October 21, 1977, a PSP officer stopped and weighed five of Shaefer's trucks carrying asphalt to the job site.  The officer obtained from the truck drivers the weigh bills they carried.  The officer then photocopied and returned these weigh bills.   Three days later, the same officer stopped and weighed the same trucks, this time empty.  Comparing the weight when empty with their weight when full, the officer determined that the amount of asphalt in each truck was less than indicated on the weigh bills previously seized.  *Id.*

The district court held that the October 21, 1977 stop and the officer's photocopying of the weigh bills did not constitute a search and seizure under the Fourth Amendment. *Id.* The Third Circuit disagreed. Relevant to the instant case, however, is the Third Circuit's discussion of standing. On appeal, the Government argued that even if a search and seizure did occur, neither Shaefer, nor Clairton Slag, had standing to challenge the Fourth Amendment violation because neither defendant had a privacy interest that was invaded. In finding that the defendants had standing, the Third Circuit stated:

> [T]he Fourth Amendment's prohibition against seizures of property does not depend upon the presence of the owner. The court has repeatedly found Fourth Amendment violations in police intrusion into unoccupied vehicles. . . . Moreover, expectations of privacy with respect to personal property survive even lawful termination of possession. . . . Finally, we note that Clairton Slag, Inc. was present at the seizures in the only way a corporation can ever be present, by its agents, the drivers. Thus, we reject the government's contention that neither defendant had a Fourth Amendment interest in objecting to the seizure of the trucks or their contents.

*Id.* at 203 (citations omitted).

*Clairton Slag* is readily distinguishable from the facts of the instant case. There, unlike here, the trucks were owned by the corporation asserting the Fourth Amendment violation, and the search and seizure took place while the truck was being used to further the defendant corporation's business. Claimant has presented no evidence which suggests, nor has he even alleged, that he was the owner of Jose Montelongo's tractor, the attached trailer, or the two pickup trucks being hauled by the trailer. Claimant's claim of ownership of the Defendant currency does not afford him standing to object to the search of another person's property wherein that currency was located. *See Salvucci,* 448 U.S. at 85-87 (holding that

even a defendant charged with possessing property constituting fruits of a search could move to suppress those fruits only if his own Fourth Amendment rights were violated).  In *Clairton Slag*, it was defendants' ownership of the trucks that were searched, and the fact that the drivers were Clairton Slag's agents, which afforded the required Fourth Amendment standing, not their mere ownership of the seized weigh bills.  *See id.*  Claimant cannot assert that any of his Fourth Amendment rights were violated by the stop, arrest, and search of Jose Montelongo's tractor-trailer.  Because Plaintiff bears the burden of proving that he has standing to assert a Fourth Amendment violation the court will deny his motion to suppress.[9]

### B. Plaintiff's Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis which would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at

---

[9] The court notes that Claimant has requested an evidentiary hearing on his motion to suppress. By order dated April 30, 2003, the court scheduled a suppression hearing for May 13, 2003.  The court reasoned that the testimony of Claimant would disclose Claimant's ownership or non-ownership of the tractor-trailer and its cargo, his lack of possession and control, his existence or non-existence of a subjective expectation of privacy.  Thus, the court ordered Claimant to appear at that hearing so as to establish his standing to seek suppression. On May 12, 2003, Claimant's counsel indicated to the court that he was unable to locate Claimant and informed the court that Claimant would not be appearing at the May 13, 2003 suppression hearing.  Because Claimant's counsel is located in Houston, Texas, the court excused his appearance at the May 13th hearing.  Claimant did not appear on May 13, 2003 at the time scheduled for the suppression hearing.  Consequently, Claimant has failed to establish his Fourth Amendment standing, and, therefore, the court will deny his motion to suppress.

12

249.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in his pleadings; instead, he must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial."  *Id.*

The facts in the instant case are not in dispute.  *See supra* Part I.A. at n.1.  Claimant's denials contained in his answer are insufficient to create a genuine issue of material fact.  *See Celotex,* 477 U.S. at 324 (stating that in responding to a motion to summary judgement the non-moving party must go beyond the pleadings and "by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial").  Here, Claimant has failed to even file a responsive brief in opposition to Plaintiff's motion, much less demonstrate through depositions, or the like, that there is a genuine issue for trial.  Moreover, Claimant has not requested any discovery from Plaintiff whatsoever.  Thus, the court must analyze whether, under the undisputed facts presented, Plaintiff is entitled to judgment as a matter of law.

Section 5317(c) of Title 31 of the United States Code states, in relevant part:

> If a report required under section 5316 with respect to any monetary instruments is not filed . . . the instrument and any property traceable to such instrument may be seized and forfeited to the United States Government.  Any such property . . . involved in a transaction or attempted transactions in violation of section 5324(b), or any property traceable to such property, may be seized and forfeited to the United States Government.

31 U.S.C. § 5317(c).

Both the complaint and the affidavit of Trooper Allar aver that Montelongo informed Trooper Allar that he was transporting the three trucks from New York to Mexico for resale.  During the course of the warrant search, the PSP found the Defendant currency hidden in two locations in Montelongo's trailer.  While he disclaimed any knowledge of the Defendant currency's presence, it is clear that said currency would be subject to the reporting requirements outlined in § 5316.  That section provides that a person or an agent or bailee of such person, is required to file a report when they knowingly transport, are about to transport, or have transported a monetary instrument greater than $10,000 from a place in the United States to or through a place outside of the United States.  31 U.S.C. § 5316.  It is a criminal offense for any person to fail to file a report under § 5316 or cause or attempt to cause such person to fail to file such a report.  *See* 31 U.S.C. § 5324(b).  Finally, a violation of § 5324(b) causes the property or monetary instrument in question to be subject to seizure and forfeiture by the United States Government.  31 U.S.C. § 5317(c).

In the instant case, it is clear that the currency in question was going to be moved from the United States to Mexico without the filing of the required report.

14

The currency was hidden in the various places throughout the trailer of the flatbed truck. Montelongo stated that his intention was to drive from New York to Mexico. He also stated that he was unaware of the currency's presence, in which case he could not have intended to file the required report. By concealing the currency in Montelongo's trailer, *someone* knowingly intended to cause him to fail to file a report under § 5316. *See* 31 U.S.C. § 5324(b). Consequently, the Defendant currency is subject to forfeiture pursuant to § 5317(c), and Plaintiff is entitled to judgment as a matter of law.

Claimant has not produced a shred of evidence which either demonstrates that there exists a genuine issue of material fact or indicates that Plaintiff is not entitled to judgment as a matter of law. Accordingly, because the undisputed facts demonstrate that the Defendant currency is subject to forfeiture pursuant to 31 U.S.C. § 5317(c), the court will grant Plaintiff's motion for summary judgment.

### C. **Plaintiff's motion for sanctions**

In its motion for sanctions, Plaintiff requests that the court dismiss Claimant's claim to the Defendant currency as a sanction for his failure to attend his own deposition. Because the court will grant Plaintiff's motion for summary judgment, Plaintiff's motion for sanctions requesting dismissal is moot.

**III.        Conclusion**

Claimant has not demonstrated that he has standing under the Fourth Amendment to request suppression of the evidence obtained as a result of the search of Jose Montelongo's tractor-trailer. Accordingly, the court will deny Claimant's motion to suppress. Moreover, based on the undisputed facts of the captioned matter the Defendant currency is subject to forfeiture pursuant to 31 U.S.C. § 5317(c). Consequently, the court will grant Plaintiff's motion for summary judgment. An appropriate order will issue.

                                        s/Sylvia H. Rambo
                                        Sylvia H. Rambo
                                        United States District Judge

Dated: May 13, 2003.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL NO. 1:CV-01-1084** |
| **Plaintiff** | : | |
| v. | : | |
| **$1,790,021 IN U.S. CURRENCY,** | : | |
| **Defendant** | : | |
| **Alejandro Martinez-Lopez, Claimant** | : | |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

(1) Claimant's motion to suppress any and all evidence seized as a result of the unlawful stop, detention, arrest and subsequent search of Jose Montelongo on December 29, 2000 is **DENIED**.

(2) Plaintiff's motion for summary judgment is **GRANTED**.

(3) Plaintiff's motion for sanctions for failure of party to attend his own deposition is **DENIED AS MOOT**.

(4) The Clerk of Court is directed to enter judgment in favor of Plaintiff United States against Defendant $1,790,021.00 in United States Currency and against Claimant, Alejandro Martinez-Lopez. Defendant *res* is hereby condemned and forfeited to Plaintiff, United States of America, pursuant to 31 U.S.C. § 5317(c) for disposition according to law. The Clerk of Court shall close the case file.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: May 13, 2003.